[Civ. No. 15778.   Second Dist., Div. Three.   Oct. 8, 1947.]

BERTHA B. GIFFORD, as Executrix, etc., Respondent, v. JOHN STEWART ROBERTS, Appellant.

Mahaney, McDonald & Isenberg for Appellant.

John W. Preston, John W. Preston, Jr., and Gerald Bridges for Respondent.

SHINN, Acting P. J.—This is an appeal by defendant from a judgment quieting title to some 63 acres of land. The claims of defendant arise out of an agreement to purchase the land from plaintiff's testator, which defendant failed and refused to consummate.

The findings are comprehensive and embrace the following facts: Carl M. Bergman was the owner of the land and offered it for sale to defendant who was acting for himself and certain associates. On May 24, 1944, an agreement was entered into for a sale of the property to defendant for the sum of $29,000, payable by a deposit of $500, $9,500 cash through escrow, and $19,000 at the rate of $3,000 or more per year secured by note and trust deed on the property. The description of the land was by metes and bounds and time was made of the essence of the agreement. The initial payment of $500 was made but defendant failed and refused to pay any further sum according to the terms of the agreement. Bergman having died, his executrix on December 11, 1944, made certain offers to defendant as an inducement to performance upon his part. She offered, in writing, to include in the description of the property a small house known as 6301 Foothill Boulevard upon condition that defendant complete his purchase, and she offered to return to defendant $500 which he had deposited if defendant wished to rescind the contract, and she stated in the letter that she would declare forfeited the rights of defendant if he did not consent to either of her proposals. Defendant did not consent and plaintiff notified him that his rights under the contract had been forfeited.

Plaintiff instituted this action and defendant filed an answer and a counterclaim in which he charged that Bergman had represented to him that the tract contained 70 acres of land, whereas it contained only 63 acres, and that he represented the entire tract to be suitable for subdivision, whereas 14 acres in the northwest corner thereof could not be subdivided until certain public works had been constructed for protection against flood waters. He alleged that these representations had been made fraudulently, that he had relied upon them in making the purchase, that the land at the date of the agreement was worth only $17,000 and that he had been damaged by the alleged fraud to the extent of $12,000. It was also alleged that the land had increased in value since the date of the contract to $29,000. It was further alleged that Bergman had agreed to allow defendant 5 per cent of the selling price upon completion of the purchase and that he had also agreed to convey to defendant for a consideration of $10 a small house known as 6301 Foothill Boulevard, and had also agreed to give defendant an option to purchase certain other adjacent lands for a sum not exceeding $4,000. The prayer

in the answer and counterclaim was for specific performance of the agreement of sale, for actual damages in the sum of $12,000, for punitive damages of $15,000, for $1,450 as a commission, and that defendant be granted an option to purchase the additional land for $4,000.

In rejecting plaintiff's proposals to modify the agreement, or rescind it and return the $500 deposit, defendant assumed and has since consistently maintained the position that he would not go through with his purchase on the original terms. He insisted throughout the trial that the purchase price be reduced to the extent of 10 per cent because of the alleged shortage in the acreage of the tract, that it be further reduced because some 14 acres were unsuitable for subdivision, that he be credited with the sum of $1,450 as a commission on the purchase price and that he be given title to the small house above described. His claimed offsets and damages exceeded the agreed purchase price. If he was willing at any time to modify his demands, the record does not disclose that fact. Plaintiff has been unwilling to accede to any of defendant's demands except the one pertaining to the small house. If, therefore, the claims of defendant as asserted in his counterclaim are without validity, he has breached his contract without justification and is entitled to none of the relief which he has demanded.

The court found that Bergman did not represent to defendant that the tract contained 70 acres of land, and also found that defendant, before entering into the agreement of purchase, knew that it contained only 63 acres. It was further found that Bergman did not represent that the entire tract was ready for subdivision. These findings are challenged by defendant as being without support in the evidence. We find them to be amply supported. Defendant's evidence as to the alleged misrepresentations was unsubstantial. There are passages in the transcript plainly indicating that the trial judge believed defendant to be somewhat discredited as a witness because of contradictions in his testimony. But if the court had believed everything testified to by defendant as to statements made by Bergman, it would have been difficult to find anything therein which could be construed as a misstatement of fact, or which would have justified an inference that he did not act in entire good faith, or that defendant was misled by any statement that Bergman made. It seems that when defendant heard the

land was for sale he wrote a letter to Bergman, in which he referred to the tract as containing *approximately* 70 acres. Bergman's reply made no reference to the acreage. Defendant placed in evidence advertisements inserted by Bergman in the daily papers at about the date of his agreement with defendant, in which he offered the property for sale and referred to it as a 70-acre tract, but it appears from defendant's testimony that he saw none of these advertisements until after he had entered into the agreement. Defendant testified that he had been on the land two or three times before he entered into the agreement; that he had met Bergman there and discussed the deal. He testified also that he had received a map of the tract from Bergman, and had shown it to an engineer whom he was consulting about improvement of the tract for subdivision; this map had been drawn to a scale indicated thereon and showed the dimensions of the property so as to furnish a basis for computation of the acreage. Defendant also made a comprehensive study of the tract, laying it out on paper into proposed town lots and acre lots. From the map received from Bergman defendant later caused the acreage to be computed by another engineer and then learned of the alleged discrepancy of some 7 acres. This, however, was after the signing of the agreement. There was no evidence that Bergman at any time stated that he knew the exact acreage in the tract or made any declaration to defendant to the effect that it contained at least 70 acres.

Defendant's evidence concerning the alleged misrepresentations as to the immediate suitability of the northwest corner for subdivision was no more substantial. He testified that he had been warned by his engineer that the northwest corner of the tract might be subject to flooding by storm waters. He had been on the land with this engineer and he made no claim that he had not observed the physical condition of the entire tract. He testified that he discussed with Bergman the matter of possible flooding and that Bergman said, as to flooding, ''I feel there is no difficulty there, that has all been cleared up—the flood control have given their okey, that is all you need. It is all ready to be subdivided.'' There was no evidence that Bergman had or pretended to have any superior knowledge as to flood conditions and if the trial judge had believed that Bergman had made the statement attributed to him it would have been entirely rea-

sonable to infer therefrom that his statement was made in good faith, that he intended it as a mere expression of opinion and that it was so understood by defendant.

There was ample evidence to justify a finding that defendant acted solely upon his own judgment and that of his engineer as to the possibility of flood damage to part of the tract.

Defendant and his engineer conferred with Bergman and discussed with him the subdivision possibilities. Bergman showed them his contour maps of the property in addition to the map which he had given defendant. This latter map showed the flood control channel and certain existing flood control protection work. The engineer testified that Bergman stated to them that there had been a "break up" but that the county flood control engineer had done some work there which corrected that condition and was prepared to do more work to correct the condition to which the engineer called his attention; also, that Bergman said that he was having trouble with the planning commission over his proposal to subdivide a portion of the property into acreage lots rather than small lots. Defendant's engineer also testified that from the map and from his inspection of the land prior to defendant's purchase he readily became acquainted with the location of the storm drain channel, and of the existence of an embankment extending across part of the property to control the flow of water out of a canyon, also the slope of the land and the elevation of the most northwesterly portion with relation to the surrounding areas. In answer to questions by the court he testified that these conditions would be readily apparent to anyone who went upon the property. It was a reasonable conclusion that Mr. Bergman's conduct and disclosures with reference to flood water conditions were honest and fair in all respects. The record contains nothing which suggests any misstatement, concealment, or intent to mislead defendant with respect to the existence of a flood control hazard and the measures that had been taken under the direction of the county flood control engineer for the protection of the land. The finding upon this issue, instead of being arbitrary and unreasonable, as it is characterized by defendant, appears to us to be the only one justified by the evidence.

In addition to the foregoing there were findings to

the effect that defendant was not deceived or misled by any representation or concealment on the part of Bergman. These findings had support in certain established facts. Defendant was a man of mature years and presumably ordinary business judgment. He undertook to make his own independent examination of the land and visited it not once but several times before he agreed to purchase. Bergman did or said nothing to interfere with or discourage a thorough examination of the land by defendant. This is true not only as to the condition of the land but as to the area contained therein, which latter could easily have been computed by defendant from the map furnished by Bergman. If defendant had been gauging the value of the land upon an acreage basis, and was not satisfied to rely upon his own observations as to its size, it was incumbent upon him to compute the acreage or have it computed for him from the map or by actual measurement. Bergman would have been justified in believing that defendant would do so.

■ An intending purchaser who undertakes to make his own examination of the property and who goes upon it for that purpose, and with a free opportunity to make a thorough examination without interference by the seller or anyone acting in his behalf, will be conclusively presumed to have acquired all of the information which would be disclosed to him if his inquiry should be pursued with ordinary diligence. (*Carpenter* v. *Hamilton,* 18 Cal.App.2d 69 [62 P.2d 1397].)

The determination of the trial court with respect to the claimed fraudulent representations and the absence of deceit have support in the evidence and are therefore conclusive on appeal.

■ Defendant having failed to establish his right to the claimed offsets, or either of them, has shown no justification for his failure to consummate his purchase. He now seeks to have the judgment reversed by this court, with directions that a new judgment be entered which would extend to him an opportunity to proceed with the terms of the purchase "under, upon, and subject to the terms, conditions and provisions established by said court." If we are to understand from this that he now seeks an opportunity to purchase the land at the original price, and upon the terms stated in the agreement, his offer comes too late. If that would have been a just and equitable provision to be incorporated

in the judgment, considering the lapse of more than three and one-half years since the date of the original agreement, defendant had an opportunity to establish that fact in the trial court. He made no effort to do this. The judgment is not justly subject to criticism upon the ground that it failed to accord him a right to acquire the property upon the original terms. He alleged in his counterclaim that the land was of the value of $29,000 as of the date of his verification of his counterclaim, and yet he was unwilling and made no offer to conclude a purchase at that price. He elected to stand upon his charge of fraud. He has had a day in court, his rights have been fairly determined and his appeal is without merit.

Other grounds for affirmance of the judgment are relied upon by plaintiff. Among them is the contention that specific performance of the agreement could not be granted defendant except in accordance with the contract, as written, or as it might be reformed by the court upon a showing justifying reformation. It is unnecessary to discuss these additional points.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 4, 1947.