[Civ. No. 23232. Second Dist., Div. Two. Feb. 5, 1959.]

GREAT LAKES AIRLINES, INC. (a Corporation) et al., Plaintiffs; IRVING E. HERMANN et al., Plaintiffs and Appellants, v. P. D. SMITH et al., Defendants and Appellants.

Keatinge & Older, and Charles H. Older for Plaintiffs and Appellants.

Youngblood & Gross for Defendants and Appellants.

FOX, P. J.—Plaintiffs* appeal from that portion of the judgment which denied relief to them under their third cause of action for damages resulting from an alleged breach of contract by defendants. The defendants appeal from that portion of the judgment granting plaintiffs relief under their second cause of action.

On September 13, 1955, defendants leased a Douglas C-54B aircraft to the plaintiffs with an option to purchase the aircraft at any time after seven months from date of said lease,

---

*As Great Lakes Airlines, Inc., is not a party to this appeal, the term "plaintiffs" as used in the opinion refers to Irving E. Hermann and Ida Mae Hermann, copartners doing business under the firm name and style of Nevada Aero Trades Company, a Nevada copartnership.

to and including September 12, 1959, for $630,000 on an instalment basis. The court found that this option was exercised on April 14, 1956. Pursuant to applicable rules of the Civil Aeronautics Administration, plaintiffs were required to perform a major airframe overhaul on the subject aircraft during July and August of 1956, at an alleged expense of $56,514.59. Plaintiffs' third cause of action sought to recover by way of damages the funds expended in performing the above overhaul.

The pertinent provisions of paragraph 4 of the lease provide:

"Upon the termination of this lease or any extension thereof and the return of said aircraft to LESSOR, there shall be an adjustment between LESSOR and LESSEE on account . . . of the number of airframe hours on said aircraft since last major airframe overhaul (major airframe overhaul to mean the ten-thousand (10,000) hour overhaul as now appearing in the United States Civil Aeronautics Administration Approved Master Copy of Great Lakes Airlines, Inc. DC-4 Maintenance Manual). In this connection it is agreed by and between LESSOR and LESSEE that as of the date hereof . . . said airframe has forty-two (42) hours since last major airframe overhaul."

Paragraph 16(d) of the lease provides:

"At the time of the delivery of said aircraft to LESSEE, LESSOR shall furnish LESSEE with all of the aircraft records pertaining to said aircraft as required to be kept by the Civil Aeronautics Administration, and said records shall be accurate and complete and shall contain all entries necessary to make said records accurate and complete as of the date and time of the delivery of said aircraft to LESSEE."

In their third cause of action, as amended and supplemented, plaintiffs in substance alleged that defendant P. D. Smith had orally represented to plaintiffs that the subject aircraft had undergone a major airframe overhaul in Japan during 1955 and had been flown but 42 hours since that overhaul and that defendant Smith would deliver to plaintiffs all of the aircraft and maintenance records pertaining to said major airframe overhaul necessary to substantiate that a major overhaul had been performed and that the airframe had been "zeroed" and "zero-timed" in Japan during 1955. That defendants refused to deliver said records and that, pursuant to Civil Aeronautics Administration rules, plaintiffs were required to perform a major airframe overhaul on the aircraft some 6,648 hours sooner than would have been neces-

sary had defendants furnished records as they were obligated to do pursuant to paragraph 16(d) of the lease and in accordance with the oral representations of Smith.

As grounds for a reversal, plaintiffs argue that the trial court erred in holding the parol evidence rule a bar to the introduction into evidence of certain offers of proof made by plaintiffs. An examination of the record and of applicable authorities fully supports plaintiffs' contentions.

A careful reading of the record reveals that plaintiffs were apparently predicating liability upon two different theories: One theory was that in truth and in fact the airframe had in excess of 42 hours, that defendant Smith represented it had but 42 and would deliver records to that effect, and 16(d) should be read to require defendants to deliver documents reflecting "represented" rather than "actual" maintenance records. In support of this theory, plaintiffs offered testimony to the effect that Smith made certain representations to plaintiffs' agents. The court held this testimony inadmissible by virtue of the parol evidence rule. The rationale for this ruling was that the trial judge took the position that the parties, in paragraph 4, had "stipulated" that the airframe had only 42 hours and parol evidence could not be received to vary this stipulation. The court stated: "That is an agreement right in the contract, a stipulation, so I think we cannot have evidence that varies it. It is for that reason I am of the opinion that granted all statements that you expect . . . to show were made, the court can, nevertheless, not consider them. So, under those circumstances . . . you had better make an offer of proof unless you want to offer it on the theory of an ambiguity."

Plaintiffs thereupon offered to prove (1) that Smith made representations to plaintiffs and their agents, servants and employees, in the course of negotiations leading up to and preceding the execution of the lease, that the airframe had only 42 hours since its last major airframe overhaul and that it had been zeroed while in Tokyo a short time prior to that and was zero-timed; (2) that Smith represented he had or would obtain and deliver to plaintiffs records substantiating the above representations; (3) that the airframe actually had 8,148 hours and not 42; and (4) that as a result of the fact that this airframe had at that time 8,148 hours of use after its last major overhaul, the plaintiffs in this action were required to major overhaul the airframe during the months of July and August of 1956, and that the total cost of

such major overhaul of the airframe alone amounted to $56,514.59.

Defendants' objections to the above offer of proof on the basis of incompetency, irrelevancy, immateriality, and the parol evidence rule were sustained, particularly on the ground of the parol evidence rule, even though the court had previously indicated the offers would be accepted on the basis of ambiguity.

 We are of the opinion that the contract, or at least paragraph 16(d) thereof, is ambiguous and that parol evidence should have been received by the court to ascertain exactly what the parties meant by what they said.

If paragraph 16(d) were to be read in a vacuum, it is reasonably clear that the reference therein to "accurate and complete" records pertains to records acceptable to and in conformity with Civil Aeronautics Administration standards and requirements, records which reflect actual hours on the airframe. However, this is not necessarily the case when paragraph 16(d) is read in conjunction with paragraph 4, and it is well established that the sense and meaning of a written contract is to be gathered from the whole of the instrument and individual provisions should not be read in isolation. (See Civ. Code, § 1641.)

The 42-hour provision in paragraph 4, by its terms, become operative if the option to purchase was not exercised by the plaintiffs and, as the option was in fact exercised, this provision would appear to have no direct application to the case at bar. However, this provision does furnish a key to the factual foundation upon which the parties, or at least the plaintiffs, believed they were dealing.

It is reasonable to assume that plaintiffs believed that the 42-hour provision was related factually to the number of hours since the last major overhaul and that it was not just an arbitrary figure. That this is a reasonable assumption is readily apparent from the substantial amount of money which might be involved in the event the option was not exercised and the plaintiffs had to pay defendants $7.50 for each hour on the airframe in excess of 42 hours since its last major airframe overhaul as is provided for in paragraph 4. It is apparent from the length and detail of the lease that the parties were conscious of the large amount of money involved and were attempting to protect their own financial interests, and it would be unrealistic to believe that the parties would stipulate to a fictitious or arbitrary figure without some

relationship to reality, or at least what the parties or one of them believed represented the actual situation at the time the lease was executed. The fact that the Civil Aeronautics Administration's requirements for overhauls are based on actual hours lends further support to the idea that the reference to 42 hours had a basis in fact.

This being the case, the intention of the parties as expressed in 16(d) is not free from doubt. Two reasonable interpretations present themselves: first, that "accurate and complete" refers to actuality, whatever that may prove to be; or, secondly, that "accurate and complete" was understood to be synonymous with or equivalent to 42 hours, in view of the foregoing discussion relative to paragraph 4. While it is true that the language of a contract is to govern its interpretation (Civ. Code, § 1638), our Supreme Court has held parol evidence admissible to aid in the interpretation of an ambiguous contract or writing. (*Chastain* v. *Belmont,* 43 Cal.2d 45, 51 [271 P.2d 498].) ▉ In *Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.,* 46 Cal.2d 517, 524 [297 P.2d 428], the court quoted from *Barham* v. *Barham,* 33 Cal.2d ·416, at page 422 [202 P.2d 289], as follows: "When the language used is fairly susceptible to one of two constructions, extrinsic evidence may be considered, not to vary or modify the terms of the agreement but to aid the court in ascertaining the true intent of the parties (citation), not to show that 'the parties meant something other *than* what they said' but to show 'what they meant *by* what they said' (citation)." In addition, the *Beneficial* case, *supra,* at page 527, specifically stated that in such a situation evidence of the preliminary negotiations was admissible.

▉ On the basis of the foregoing analysis of the lease and the authorities to which reference has been made, prejudicial error resulted from the exclusion of plaintiffs' offers of proof as to the true meaning of 16(d).

Defendants argue that the plaintiffs refused to offer evidence on the theory of ambiguity and, therefore, they are in no position to raise the question on appeal. The record, however, discloses without doubt that plaintiffs made an offer on the basis of ambiguity. The following abstract from the record is illustrative:

"THE COURT: . . . So, under those circumstances . . . you had better make an offer of proof unless you want to offer it on the theory of any ambiguity."

COUNSEL: "Well, of course, I am not limiting the nature of my offer at all, your Honor, I am offering it in general.

"THE COURT: Then I will state you are offering it on the basis of ambiguity, I will receive it on that basis but not otherwise."

COUNSEL: "Then, your Honor, I will offer it on the basis of ambiguity.

"THE COURT: All right, then."

At this juncture the plaintiffs made the offers of proof to which previous reference has been made and, as already noted, the court nevertheless sustained defendants' objections thereto.

 Plaintiffs' other theory apparently was that the air-frame was overhauled in Tokyo in 1955, records made thereof, and that had defendants furnished plaintiffs with those records as they were required to do by paragraph 16(d), plaintiffs would not have had to overhaul the airplane when they were required to do so by the Civil Aeronautics Administration. In this regard, plaintiffs' counsel stated to the court: "We have already offered to prove that the defendant Smith did not, prior to the time that we majored this aircraft, furnish us the records which he undertook to furnish us by paragraph 16(d). I offer to prove—I believe at one time he did furnish us certain records on October 17, 1956 after the major overhaul was performed—but as part of my offer of proof I at this time offer in evidence and ask that it be marked for identification, a letter from P. D. Smith, Inc. by P. D. Smith, President, addressed to Nevada Aero Trades Company bearing date October 17, 1956, reading as follows: 'Re Lease of Aircraft No. N37473. Dear Sir, this letter is to notify you that on October 12, 1956, at 2:45 p.m. P. D. Smith, Inc. in accordance with the authority contained in your letter of September 25, 1956, delivered to Mr. H. S. Richards, who is Vice President, Great Lakes Airlines, Inc., at Burbank, California, certain aircraft records pertaining to that certain Douglas C-54B type aircraft, manufacturer's Serial 10513, Civil Aeronautics Administration N37473 as follows: (1) Document entitled 'Air-frame periodic inspection' (JAM CO, Tokyo) consisting of 19 pages and certified by Frank L. McClasky, A&E. No. 9684; (2) Document entitled '11,000-hour overhaul' consisting of 14 pages including the cover page, and certified by Frank L. McClasky A&E No. 9684. These records have just recently become available to the undersigned and those have been delivered to your representative. Very truly yours, P. D. Smith, Inc. by P. D. Smith.'

"As a part of the same offer of proof, and I would like to have it marked for identification at this time, I offer the two documents which are referred to in the letter as being transmitted with it. In addition, your Honor, I yesterday offered to prove that we had performed this major overhaul during the months of July and August, 1956, at a total cost of $56,514.59. I now want to supplement that offer of proof by an additional offer of proof to the effect that had the records which were supplied to us on October 17, 1956, after our major overhaul was complete, had those records been supplied to us in accordance with the requirements of 16(d) at the time the plane was delivered to us, we would have saved all of the cost of this overhaul with the exception of approximately $1,500, or, in other words, that had these records been supplied to us we could have eliminated all of this major overhaul at the time it was performed except for a portion relating to one of the landing gears, the cost of which would have been approximately $1,500, and that as part of our offer of proof, the plaintiffs in the absence of these records were required to perform the overhaul at the time they did and could not further defer it." The above documents were marked for identification but not received in evidence, the trial judge again sustaining defendants' objection based on the parol evidence rule.

It is difficult to conceive how the above in any manner tended to add to, vary or contradict paragraph 16(d). As noted, 16(d) required defendants to furnish to plaintiffs (when the aircraft was delivered) all aircraft records pertaining to the aircraft as required to be kept by the Civil Aeronautics Administration. These Tokyo records were not furnished to plaintiffs when the aircraft was delivered to them, and under sections 18.20 and 18.21 of part 18 of the Civil Air Regulations such records were required to be maintained. Therefore, a failure to deliver these records clearly constituted a breach of 16(d) and they should have been admitted in evidence. The parol evidence rule was in no way applicable. Whether they would have actually shown the number of air hours or other data pertinent to establishing damages by the breach is not involved in this appeal. Paragraph 16(d) warranted lessor would furnish these records, and paragraph 16(g) provided that lessor would pay lessee any and all damages, costs, and expenses suffered by lessee as a result of a breach of any warranty. Plaintiffs certainly should have been permitted to establish the breach of warranty contained in 16(d).

■ By their second cause of action, plaintiffs sought a declaration that they validly exercised the option to purchase the aircraft either on April 14 or 18, 1956, and that certain moneys paid to the defendants should be applied toward the purchase price of the airplane. The trial court found that the option was properly exercised on April 14, 1956, and the defendants appeal.

Paragraph 15 of the lease provides:

"OPTION: LESSOR hereby expressly grants to LESSEE an absolute option to purchase said aircraft at any time after seven (7) months following the date of this agreement, and said option shall continue to and including September 12, 1959, on the following terms: Purchase price to be the sum of Six Hundred Thousand Dollars ($600,000.00) in cash with the first seven months' rent hereunder to apply against the purchase price, or the sum of Six Hundred Thirty Thousand Dollars ($630,000.00) with the first seven months' rent hereunder to apply against the purchase price and the balance payable in thirty-five (35) equal monthly installments commencing on the date said option is exercised. If said option to purchase is exercised and LESSEE elects to pay on the aforesaid installment method, then the sale of said aircraft shall be effected by means of a Conditional Sales Agreement, a copy of which is marked Appendix "C," is attached hereto and made a part hereof, and the execution and delivery by LESSEE to LESSOR of a promissory note for the balance of the purchase price after applying the first seven (7) months' rent to the purchase price, a copy of which note is marked Appendix "D" and attached hereto and made a part hereof. LESSEE shall give to LESSOR at least ten (10) days' written notice of its intention to exercise said option.

"In the event LESSEE elects to exercise its option to purchase said aircraft under the provisions of this paragraph fifteen (15) and elects to pay on the aforesaid installment method, LESSEE shall concurrently with the giving of said written notice to LESSOR of LESSEE's election to exercise said option, deliver to LESSOR two (2) copies of the Conditional Sale Agreement and two (2) copies of the Promissory Note attached hereto as Appendices "C" and "D" signed by LESSEE. LESSOR shall, at the time of delivery of said documents to him, deliver to LESSEE two (2) copies of said Conditional Sale Agreement signed by LESSOR. Both LESSEE's and LESSOR's copies of the Conditional Sale Agreement shall be duly executed and acknowledged by said parties in a form acceptable

to the United States Civil Aeronautics Administration for recording purposes. If LESSOR fails to deliver to LESSEE the copies of said Conditional Sale Agreement as specified above, LESSEE may retain possession of said aircraft in accordance with LESSEE's rights under said option and LESSEE shall be relieved of the obligation of making any payments to LESSOR as provided hereunder or as provided in said Conditional Sale Agreement, until LESSOR has delivered to LESSEE the signed and acknowledged copies of said Conditional Sale Agreement.

"LESSEE shall have the right to exercise the option to purchase granted herein and to execute said Conditional Sale Agreement and Promissory Note at any place desired by LESSEE. Delivery of said aircraft hereunder shall be made from LESSOR to LESSEE at any place in the continental United States designated by LESSEE, and the cost of delivery of said aircraft to such designated place of delivery shall be borne by LESSEE."

On or about March 31, 1956, plaintiffs notified defendants that they intended to exercise the above option and would take delivery at Cape May County Airport, Wildwood, New Jersey, on April 13, 1956. Accompanying the above notice were four copies of a conditional sale agreement in the form provided for in the lease, together with a promissory note in the principal amount of $507,500. The notice also provided that "the Conditional Sale of said aircraft and the delivery of such Conditional Sale Agreement and said Promissory Note to you shall be effective upon but not before the delivery of said aircraft to Nevada Aero Trades Company at Wildwood, New Jersey, on April 13, pursuant to the terms of said Conditional Sale Agreement."

On April 12, 1956, Charles Older, attorney for plaintiffs, informed defendants that the aircraft had been delayed and would not arrive at Wildwood until April 14. On April 14, Richard Keatinge, another attorney for plaintiffs, met the defendants' representative Smith at Wildwood. Due to weather conditions, the aircraft was not then present, but Keatinge nevertheless tendered to Smith a check for $14,500 and the lease and receipt, and demanded from Smith the two executed copies of the conditional sales agreement. Keatinge told Smith that the condition required the aircraft to be present was waived. Keatinge's authority to waive this provision was not in writing. Smith refused the tender and remarked that he would do nothing until the aircraft ar-

rived. Plaintiffs' agent, Senko, and Smith met at Wildwood on April 18, at which time the aircraft had arrived and the tender renewed, yet Smith again refused the tender without stating any particular objections thereto. Senko had written authority to act for plaintiffs.

It is defendants' position that the presence of the aircraft was a condition precedent to the operation and effectiveness of the exercise of option, and that as personal property in excess of $500 was involved, the agreement was within the statute of frauds and plaintiffs' agent's authority to make same must have been in writing and, as it was not, the defendants were justified in refusing to accept the agent's waiver for the plaintiffs would not be bound by it.

Section 2309 of the Civil Code only requires an agent's authority to be in writing when the contract itself is required to be in writing. We are of the opinion that Keatinge did not purport to enter into or modify a contract. The provision relative to the aircraft's presence was not part of the option provision of the lease. Furthermore, assuming, arguendo, that he did enter into or modify a contract, it is clear under the provisions of section 1973a, Code of Civil Procedure, and sections 1624a and 1724 of the Civil Code, that the instant transaction relative to the purchase of the aircraft was not required to be in writing. These sections are identical and provide that a contract for the sale of goods of the value of five hundred dollars or more must be in writing. It is further provided, however, that a writing is not required if the buyer shall make part payment. In the instant case, plaintiffs not only executed and delivered the promissory note to the defendants, but the rent that actually had been paid for the first seven months was to be applied toward the purchase price, under the terms of the lease and option agreement, and this is sufficient part payment to take this phase of the transaction out of the statute of frauds. It therefore follows that the delivery aspect here in question was not within the statute of frauds. Hence, the agent's authority relative thereto need not have been in writing.

That portion of the judgment from which plaintiffs appeal is reversed; that portion of the judgment from which defendants appeal is affirmed.

Ashburn, J., and Herndon, J., concurred.

The petition of defendant and appellant P. D. Smith for a hearing by the Supreme Court was denied April 1, 1959.