[Civ. No. 19521.   First Dist., Div. One.   Apr. 5, 1962.]

PEARL GREENBERG, Plaintiff and Respondent, v. HARRY
H. HASTIE et al., Defendants and Appellants.

162

Myrick & Deering and Scott, Robert McKibbin Scott, Tobin & Tobin and John J. Ford III for Defendants and Appellants.

William Berger for Plaintiff and Respondent.

SULLIVAN, J.—Defendant Earl M. Berendsen and defendants Harry H. Hastie and Hastie Real Estate Inspection and Repair, Inc., a corporation, separately appeal from a judgment rendered, after a nonjury trial, against said defendants and in favor of the plaintiff Pearl Greenberg, in the sum of $2,800, by the terms of which Berendsen is in effect made primarily liable and Hastie and the above corporation jointly made secondarily liable.

The present controversy arises out of the purchase and

sale of a four-unit San Francisco apartment house damaged by termites and dry rot. Berendsen, the seller of the property, listed the property with the McNair Realty at a price of $42,500 in May 1958. Later in May, one Edmond F. Darrimon, a real estate broker associated with the Fairmont Realty, who had formerly been employed as a salesman by McNair Realty and had heard about the listing, showed the above property to the plaintiff. On Mrs. Greenberg's behalf, he presented to McNair Realty, her written offer to purchase for $38,500. It was refused. Berendsen then ordered a termite inspection by one Davis, a termite consultant, who furnished Berendsen a written report dated May 23, 1958, showing the structural pest condition and stating recommendations for its correction at an estimated cost of $1,100.

Mrs. Greenberg then increased her offer to $42,500. Darrimon on her behalf presented such offer in the form of a Uniform Agreement of Sale and Deposit Receipt, hereinafter referred to as agreement of sale, bearing date of May 21, 1958. Berendsen accepted the offer and signed the deposit receipt. Although his acceptance is also dated May 21, 1958, he testified that he actually signed the agreement three or four days later.[1] The above agreement of sale set forth the following terms of sale: "1. Cash above maximum loan. 2. Subject to termite and dryrot inspection. 3. Inspection to be paid for by buyer. 4. If any work to be done to be paid for by seller. 5. Furniture in the four apartments to be included in sale."

With the plaintiff's approval, Darrimon then arranged with the defendant Hastie, who had previously done work for Darrimon, to make an inspection of the property for termites and infestation. Mrs. Greenberg had never heard of Hastie before; she merely told Darrimon to get a thorough inspection. On May 23, 1958, apparently a day or two before Berendsen signed the agreement of sale, but after the offer had been delivered to his agent, Hastie in the company of Darrimon made an inspection of the property. His written report, thereafter delivered to Darrimon, and stating that the inspection was ordered by "Buyer c/o Mr. Edmond Darrimon," set forth the infestation found, the recommendations for corrective work and the "[c]ost of noted recommendations $300.00." Darrimon then advised Mrs. Greenberg that the report recom-

---

[1]The property was apparently held for Berendsen in the name of a nominee. Berendsen signed the offer for such nominee. The subsequent conveyance was from the nominee to plaintiff. We will herein consider Berendsen as the owner.

mended repairs costing $300 to which she expressed assent providing such amount would be held out of the seller's funds in escrow. She herself did not read the report until she later went to the title company to close the transaction. The parties then signed escrow instructions, the seller's instructions authorizing a $300 debit against the seller "[w]ith hold for termite work" and the buyer's instructions authorizing a $10 debit against the buyer for Hastie's inspection fee. The plaintiff did not recall reading the seller's instructions when she signed the buyer's instructions.

The transaction was closed on or about June 11, 1958. Within a week Hastie prepared to start the corrective work, but found out "there was a vast amount of work to be done" and that "it would run into a whole lot more money." Hastie then stopped the repair work. Mrs. Greenberg then had the Rose Exterminator Company inspect the property. That company made an inspection on July 15, 1958, and a further inspection, issuing a report and supplemental report which together showed more extensive infestation and suggested corrective work costing $3,740. Up until the time of the trial, however, nothing had been done about commencing corrective work.

Plaintiff's amended complaint for declaratory relief and damages which is the only complaint in the record before us, contains three separately stated causes of action. The first cause of action against all three defendants sounds in negligence. It alleges that plaintiff and defendant Berendsen entered into an agreement of sale, that Berendsen "by and through his agents" requested Hastie to make a thorough inspection for termites and dry rot, that Hastie made an inspection advising Berendsen that the repairs would cost $300, that the parties consummated the sale acting upon Hastie's recommendation, that Hastie was careless and negligent in making his inspection and report, and that the cost of repairs was approximately $4,000, as a result of which plaintiff was damaged in the amount of $4,000. The second cause of action, although purportedly naming all three defendants, sounds in fraud and is in fact against Berendsen alone. It alleges that Berendsen knew full well the condition of the premises, but both actively concealed the same and failed to disclose it to the plaintiff; that plaintiff relied upon said defendant's representations, and was thereby damaged. The third cause of action is for declaratory relief. It in effect re-alleges all of the facts of the transaction and alleges that

plaintiff desires "that this Court make a declaration of the rights and obligations of the plaintiff and both of said defendants in and to the said agreement of sale."

The trial court found that Mrs. Greenberg and Berendsen had entered into the contract of purchase and sale as alleged, that a termite and dry rot inspection of the premises was made by the defendant Hastie "doing business as Hastie Real Estate Inspection and Repair, Inc.,"[2] that acting upon the written recommendation of Hastie and upon a report filed with the title company by the corporate defendant the property was transferred to plaintiff and $300 withheld for corrective work, that the reasonable cost of the corrective work for the dry rot and termite damage found to exist was $2,800 (which includes the above $300) and that the defendant Hastie "doing business as aforesaid" was careless and negligent in making his inspection. The court further found that it was not true that the areas Hastie did not inspect were concealed or inaccessible, or that the written report furnished by Hastie was full, true or correct or that Mrs. Greenberg or Darrimon orally instructed Hastie to make the repairs as set forth in his report. It was found that it was the intention of Mrs. Greenberg and Berendsen that the latter "was to pay for any and all termite and dry rot damage that may be found upon said premises existing at the time of said sale." By reason of Hastie's negligence, according to the trial court, Mrs. Greenberg was damaged in the sum of $2,800.

In making general findings that certain allegations of the amended complaint were true, the court omitted the paragraph alleging, as we have pointed out above, that Berendsen, by and through his agents, requested Hastie to make the inspection and that Hastie pursuant thereto, rendered the report and advised Berendsen of the cost. Thus no finding dealt with the question of agency originally posed by these allegations.

The trial court also found that Berendsen did not practice any false or fraudulent conduct.

Judgment was that the plaintiff recover from the defendant Berendsen the sum of $2,800, said sum including the $300 deposited with the title company "and that said plaintiff

[2]All of the parties appear to have considered Hastie and the corporate defendant as one and the same person. The amended complaint contains no allegations of corporate capacity or otherwise referring to the corporate defendant. The answer of such defendants is not in the record before us. Since the parties raise no issue on this point, we will treat these two defendants in the same way.

recover judgment against the defendant HARRY HASTIE and the HASTIE REAL ESTATE INSPECTION AND REPAIR, INC., a California corporation, the said sum of $2,800.00, in the event that said EARL M. BERENDSEN is unable to pay such aforesaid amount by return of execution unsatisfied. . . .''

### APPEAL OF THE DEFENDANT EARL M. BERENDSEN

The defendant Berendsen contends that: (1) The failure of the court to find on the material issue of the agency of the real estate agent Darrimon requires reversal; (2) the court erred in denying Berendsen's motion for nonsuit; (3) the court failed to interpret the entire contract; (4) one of the findings is inherently contradictory and inconsistent; and (5) the measure of damages applied below was wholly speculative and against the law. We will discuss the first four contentions in order. Since appellant Hastie also objects to the measure of damages, we will consider this issue separately.

The evidence leads to the almost inescapable conclusion that Darrimon was acting as the agent for the buyer Mrs. Greenberg and that McNair Realty was acting as the agent for the seller Berendsen. This was the testimony of the respective agents themselves and was the ruling of the court during the trial. Darrimon's signature on Mrs. Greenberg's offer as agent for seller appears to have been a mistake. Since Darrimon employed Hastie, the latter's knowledge and negligence, it is argued, were imputed to and binding upon Darrimon's principal, Mrs. Greenberg. Berendsen complains that the court thus failed to make a finding on a material issue.

The trial court found that the parties by their agreement of sale intended that Berendsen pay for any and all termite and dry rot damage and determined that Mrs. Greenberg was entitled to recover the costs of repairing such damage from Berendsen. Her recovery was thus sustained on the contract under the third count. It was not predicated on any negligence of Berendsen or of his agent under the first count or on any fraud of Berendsen under the second count. Whether Darrimon, and hence Hastie, were agents of the buyer or seller made no difference. The agency of Darrimon was thus not material. The judgment against Berendsen, predicated on such contract obligation, was amply supported by findings, sustained by sufficient evidence. Other issues become immaterial and a failure to find thereon does not constitute prejudicial error. (*Chamberlain* v. *Abeles* (1948) 88 Cal. App.2d 291, 300 [198 P.2d 927]; *Duval* v. *Duval* (1957) 155

Cal.App.2d 627, 631 [318 P.2d 16]; *Merrill* v. *Gordon & Harrison* (1929) 208 Cal. 1, 6 [279 P. 996].)

Appellant suggests the above agency issue was material in connection with the interpretation of the agreement of sale, because such document had to be strictly construed against its author, Darrimon. However, since we conclude, as we shall hereafter explain, that the court properly interpreted the agreement of sale, it is our view that the above rule of construction does not become a significant instrument of interpretation to the point where it makes Darrimon's agency material.

■ This brings us to Berendsen's next contention: that the court erred in denying his "motion for judgment" following the court's determination of the issue of Darrimon's agency. The record discloses that Berendsen's counsel moved "for a directed verdict." Assuming it was made at a proper time in the proceedings, it was actually a motion for nonsuit. It was based on the hypothesis, also urged here, that since plaintiff sought relief for fraud, the determination that Darrimon was her agent and had employed Hastie as an expert for the plaintiff, eliminated from the case any reliance by the plaintiff on the representations made by Berendsen. As a result Berendsen was free of liability. In short, appellant claims that Mrs. Greenberg had relied on her own investigation. Appellant cites *Hackleman* v. *Lyman* (1920) 50 Cal. App. 323, 328 [195 P. 263]; *Carpenter* v. *Hamilton* (1936) 18 Cal.App.2d 69, 71 [62 P.2d 1397]; *Gifford* v. *Roberts* (1947) 81 Cal.App.2d 712, 718 [184 P.2d 942]; and *Heifetz* v. *Bell* (1950) 101 Cal.App.2d 275 [225 P.2d 231]. All are actions for damages for fraud, except the *Gifford* case where the vendor's fraud was interposed as a defense. All state the settled rule that in an action to recover for fraud "where a party relies on his own investigation and inspection of property, regardless of the vendor's representations, he cannot claim to have been misled by such statements." (*Heifetz* v. *Bell, supra,* at p. 277.)

We have no quarrel with the above rule but it is of no assistance to appellant here. As we have pointed out, judgment against appellant is predicated, not on his fraud, but on his contract liability where the issue of Darrimon's agency is immaterial. No prejudice can possibly result to appellant from the denial of his motion for nonsuit, since it was obviously directed to the plaintiff's second cause of action for fraud. The trial court found in Berendsen's favor on the fraud issue.

Appellant, nevertheless, is not oblivious of the real basis of his liability, namely, his contract with Mrs. Greenberg. Against this he directs the main force of his arguments, claiming first that the trial court failed to interpret the entire agreement between the parties and secondly, that the court expressed its interpretation of the agreement in contradictory and inconsistent findings. We will consider each of these separately.

At the outset, appellant maintains that the contract in controversy is made up of the agreement of sale and the subsequent escrow instructions. His real position seems to be, however, that the agreement of sale was ambiguous so far as its terms involved here are concerned, and that such terms were made free from ambiguity by reference to the escrow instructions and to the testimony of the plaintiff herself. Such extrinsic evidence, so appellant argues, establishes that appellant's liability under the agreement of sale was limited to $300 and that the trial court erred in failing to consider such extrinsic evidence. Respondent, on the other hand, takes the position that the agreement of sale was unambiguous and constituted by itself the complete agreement of the parties, thus precluding resort to extrinsic evidence. Respondent argues that the trial court, in its finding as to the intention of the parties found the agreement to be clear and unambiguous. The finding in question, however, contains no such language.

Our first inquiry, then, is as to whether or not the trial court determined the agreement of sale to be ambiguous, at least in respect to the above mentioned terms of sale, and admitted the extrinsic evidence referred to by Berendsen as an aid to interpretation. The record does not speak with complete clarity on this point. No issue of ambiguity seems to have been raised at the time the buyer's and seller's instructions were admitted in evidence during the early part of plaintiff's case in chief but as defendant Berendsen's exhibits. They were introduced pursuant to stipulation of counsel "to give the Court the entire picture of the whole transaction." Nor was such issue raised during the direct examination of the plaintiff on her case in chief, an excerpt from which appellant also relies upon as extrinsic evidence. However, the matter does appear to have arisen upon the cross-examination of the plaintiff at the very conclusion of plaintiff's case in chief. At that time, although the court stated that there was no ambiguity in the terms of the contract, it permitted cross-examination of the plaintiff by both defendants on the subject

of the escrow instructions and the closing of the transaction. The general tenor of the record indicates, contrary to appellant Berendsen's argument, that the court did consider the extrinsic evidence in aid of interpretation of the agreement.[3]

Our conclusion does not require that we find the court's determination to do so evidenced in the record with procedural formalism. ▮ While the trial court before admitting extrinsic evidence must determine, as a question of law, that the contract in question is ambiguous or uncertain, the law does not specify how it shall make the required determination of ambiguity. (*Schmidt* v. *Macco Construction Co.* (1953) 119 Cal.App.2d 717, 730 [260 P.2d 230].) ▮ It is generally considered, therefore, that when the court admits the extrinsic evidence, it necessarily rules that the contract is ambiguous, which is the only determination that need be made. (*Schmidt* v. *Macco Construction Co., supra.*)

Appellant complains, however, that the court failed to interpret the escrow instructions, failed to give weight to the testimony of the plaintiff on that subject and completely failed to reveal its interpretation of any of the specific terms of either the agreement or the escrow instructions. The court considered all of the evidence and expressed its interpretation of the contested terms of sale in its finding. Appellant's real complaint is that the court did not interpret the agreement in the manner urged by appellant.

▮ The evidence pertinent to the issue we now discuss shows that plaintiff made a written offer to purchase at $42,500 subject to termite provisions, which had been inserted on the document before she signed it. After the offer was presented, she was told by Darrimon that Hastie had made an inspection and that $300 work was to be done. She said that was all right so long as the $300 was withheld at the title company. She had no dealings directly with the seller. She did not read Hastie's termite report until she went to the title company which according to the date of the buyer's instruc-

---

[3]During the arguments at the conclusion of the case, the court stated: "You see, I have to construe all these documents, all the documents and things that went up to the title company. . . . I think when the $300.00 was placed with the title company that was done in the nature of security and it was done under the apprehension, by the parties, or at least by the buyer, that that was sufficient security; . . . I think that I have to find first with regard to what condition the parties did contract, and I say it was the actual condition that they had in mind, and the $300.00 was just security. . . . I am construing all these documents."

tions was June 5, 1958. In her instructions she authorized payment of $10 termite inspection fee. She did not recall whether she read the seller's instructions on that occasion. Actually it would appear that she did not because they are dated June 6, 1958. After the transaction was closed she learned from Hastie that the corrective work was going to run into more money and she responded that Berendsen would have to pay for it.

Berendsen testified that before he accepted Mrs. Greenberg's offer, he ordered his own termite inspection to be made by one Ben Davis and was present when Davis made it. Davis furnished Berendsen a report dated May 23, 1958, showing $1,100 work to be done. According to Berendsen, he accepted the buyer's offer on either May 24th or May 25th. He had no direct dealings either with Mrs. Greenberg or with Darrimon. In some way, he learned that the buyer had a termite report showing $300 work. Nevertheless he did not place any limitation on the amount of his liability when he accepted the offer. McNair, the defendant Berendsen's agent, testified that Berendsen wanted more than Mrs. Greenberg's first offer of $38,500 in view of necessary termite work in the sum of $1,100. He further testified that Berendsen said that $300 was the limit he would pay for termite work. He said he told Darrimon about this but this limitation was not put in the written contract because it was orally understood. His seller's instructions authorized $300 to be withheld for termite work.

According to the trial court's construction of the terms of the agreement of sale, the parties intended that Berendsen was to pay for any and all termite work and dry rot damage. In the light of the foregoing evidence, including properly admitted extrinsic evidence, and upon the basis of reasonable inferences therefrom it cannot be said that the court's interpretation of the terms of sale is unreasonable. The fact that $300 was to be withheld for corrective work according to the seller's instructions does not impel the conclusion that the seller's liability was so limited and that the buyer agreed to such limitation. Nor was the court necessarily compelled to conclude either from plaintiff's escrow instructions or her testimony relative thereto, that she had given a ''construction'' to the agreement, before any controversy arose and that such construction ''is entitled to great weight and will, when reasonable, be adopted and enforced by the court. [Citations.]'' (*Woodbine* v. *Van Horn* (1946) 29 Cal.2d 95, 104 [173 P.2d 17]; see also *Barham* v. *Barham* (1949) 33 Cal.2d

416, 422-423 [202 P.2d 289].) The trial court could have found from the evidence that the seller bound himself to correct all termite and dry rot damage existing at the time of the sale, even though the buyer thought there was only $300 corrective work.

We find substantial evidence in the record to support the trial court's finding which interprets the agreement of sale. ■ In *Brookes* v. *Adolph's Ltd.* (1959) 170 Cal.App.2d 740, 746 [339 P.2d 879], it is said: "It is well-settled that an appellate court will accept the interpretation of a contract adopted by the trial court and will not substitute another of its own where parol evidence has been introduced in aid of its interpretation and such evidence will support conflicting inferences. [Citations.] 'Where extrinsic evidence has been properly admitted as an aid to interpretation, and either the evidence or inferences therefrom are in conflict, any reasonable construction by the lower court will be upheld under the general rule of conflicting evidence.' (3 Witkin, California Procedure, 2253, § 89.)"

Appellant relies on *Union Oil Co.* v. *Union Sugar Co.* (1948) 31 Cal.2d 300 [188 P.2d 470] in support of the proposition that a judgment will be reversed where the trial court admitted extrinsic evidence as an aid to interpretation but interpreted the agreement without reference to such evidence. The *Union Oil Co.* case is distinguishable because in that case the inference supporting the trial court's conclusion could be drawn only if the court disregarded other evidence which the court at the same time found to exist. As a result the evidence was not reasonably susceptible of an inference which supported the judgment. In the case before us, it is.

What we have said, disposed of appellant's argument that the termite clauses should be construed together. Term No. 2 reads: "Subject to termite and dryrot inspection." Term No. 4 reads: "If any work to be done to be paid for by seller." Appellant argues that they should be read together with the following effect: "If any work to be done (in accordance with the termite and dry rot inspection), such work to be paid for by seller." However, as we have pointed out, the court could reasonably conclude that although the buyer had the right to have a termite inspection, the seller would still be liable for *any* work necessary to correct the existing condition.

■ Contrary to appellant's claim, we do not think that the court's finding which states that the parties intended

Berendsen to pay for any and all termite and dry rot damage and also states that both parties relied upon Hastie's written report "in concluding said sale and purchase" contains inconsistent and contradictory findings. The first portion of the finding expresses the court's interpretation of the agreement and determines the extent of Berendsen's obligation created by the instrument he signed. The second portion of the finding deals with the circumstances surrounding the closing of the transaction at the title company, almost two weeks after his liability had attached. The trial court could have well believed that although the parties, in closing the transaction thought the cost of corrective work would be $300, nevertheless also intended that Berendsen would remain liable, if for any reason it would cost more to correct the then existing condition.

### APPEAL OF DEFENDANTS HARRY HASTIE AND HASTIE REAL ESTATE INSPECTION AND REPAIR, INC.[4]

Hastie makes a number of contentions which are reducible to the following: (1) No privity of contract existed between the plaintiff and Hastie giving rise to a cause of action in favor of the former for the negligent breach of a contractual duty by the latter; (2) the plaintiff did not establish that she relied on Hastie's report; (3) Hastie was not negligent in making the inspection or the report; and (4) the trial court applied an improper measure of damages against Hastie. We shall discuss the first three contentions in the above order. We propose to consider separately rules of measure of damages applicable to all defendants.

As we have pointed out, the court at the outset of the trial, specially tried the issue of the agency of Darrimon and concluded that he was plaintiff's agent whereas McNair was the agent of Berendsen, the seller.[5] Although such ruling is expressed as a finding in the proceedings, no written finding of fact was ever made on this issue. As we have said, however, the record supports the above conclusion beyond any reason-

---

[4]Both of these defendants have appealed, but counsel appears to have considered the corporate defendant as one with Harry Hastie; the sole appellant on the briefs. We shall do likewise.

[5]Plaintiff is not bound by the allegation in her amended complaint to the effect that Hastie was hired by Berendsen's agents. Although plaintiff did not amend to conform to the proof, as the court permitted, the parties appear to have tried the case on the basis of the above ruling and considered that the foregoing allegation "has been amended orally."

able question. Thus, it shows that the buyer, Mrs. Greenberg through her agent Darrimon, requested Hastie to make an inspection of the premises, that he did so, that he sent his report to the buyer, in care of Darrimon, and that the buyer paid him his inspection fee. The record therefore shows clearly that between Mrs. Greenberg and Hastie there was a privity of contract.

It is true that the findings of fact do not express such contractual relationship as clearly as they do, for example, that which existed between Mrs. Greenberg and Berendsen. There is no *express* finding that Mrs. Greenberg and Hastie entered into a contract with reference to the inspection of the premises. But there is an express finding that a termite and dry rot inspection was made by Hastie and that the charges therefore were paid by the plaintiff; an express finding to the effect that it was not true that the plaintiff or Darrimon orally instructed Hastie to make the repairs set forth in his inspection report; and an express finding to the effect that it was not true that Hastie's report complied in all respects with any instructions he may have received from Darrimon. In our view, from these express findings, it can be reasonably implied that the court found that the plaintiff, through Darrimon, ordered such inspection of the premises. Such an implied finding has the almost uncontradicted support of the record and is fully consistent with the judgment against Hastie. ■■■■ As stated in *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593]: "[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made."

In the light of the record, it also appears that had the trial court made a finding on such issue, it could have only found that the buyer ordered Hastie to make the inspection and thus have found adversely to Hastie's contention here that no privity of contract existed between them. Appellant Hastie makes an oblique approach to the problem we have discussed. While not charging the trial court with failure to find on a material issue, he poses the question: May plaintiff recover without privity of contract? ■■■■ The answer to appellant's question is that he cannot complain of a lack of finding, where, if made, it would have necessarily been against him. (*Miller* v. *Ambassador Park Syndicate* (1932) 121 Cal.App.

92, 97 [9 P.2d 267]; *Arsenian* v. *Meketarian* (1956) 138 Cal.
App.2d 627, 633 [292 P.2d 293].)[6]

Appellant contends that Mrs. Greenberg did not
rely on his inspection report and that the finding that she did
in concluding the sale, is against the evidence. However the
record shows that she was told by Darrimon that the report
recommended repairs in the amount of $300 and that she
replied that it was all right as long as such amount was held
out to pay for the repairs. It also appears that she read the
report at the time she closed the transaction. We think that
it can be reasonably inferred from the foregoing that she
relied on the report in closing the transaction and that the
court's finding is supported.

The findings pertaining to the defendant Hastie's
negligence, which we have detailed earlier in this opinion, are
also supported by substantial evidence. It will be recalled
that Hastie's inspection was made on May 23, 1958. Williams,
a termite inspector for the Rose Exterminator, called as a
witness for the plaintiff, testified that he made two inspec-
tions of the premises in July and August 1958. After his first
inspection he made detailed findings of infestation and of
conditions conducive to infestation, together with recommenda-
tions for corrective work costing $1,880. Among such findings
were those pertaining to areas conducive to infestation or
which suggested further inspection. He suspected hidden
infestation and recommended that areas at the bases of the
porches be opened up for further inspection. The opening
of these areas by him on a subsequent inspection dis-
closed further termite and fungus damage, increasing the cost
of necessary corrective work to $3,740. Williams' inspection
report and supplemental report containing his findings and
recommendations were received in evidence. He also testified
that there could not be much difference in the condition of
infestation on the occasions when he made his inspections
and two months earlier when Hastie made his report.

Although, upon the objection of appellant, Williams did not
testify directly as to the completeness of Hastie's report which

[6]We are not precluded from inferring as to the trial court's finding
of an existing privity of contract between the plaintiff and Hastie
because of the provisions of Code of Civil Procedure section 634 (as
amended in 1959, Stats. 1959, ch. 637, § 2, in effect September 18, 1959,
and therefore prior to the trial of this case which began November
17, 1959) since it does not appear that appellant Hastie made a written
request for a specific finding on this issue as prescribed by the above
section.

was also in evidence, the court had both reports before it for comparison, as well as the explanatory testimony of their respective authors. Such oral and documentary evidence showed evidence of conditions likely to lead to infestation and of conditions warranting further inspection which were covered by the Rose report but not by the Hastie report. The Rose report itself could be said to be a more thorough and complete statement of the existing conditions than the Hastie report, bringing to light more extensive corrective work which entailed more expense. The two reports and the testimony of their authors were thus in conflict. The trial court had all this before it, observed the demeanor of the parties and heard their explanation of the condition of the premises.

Hastie's duty of care in inspecting the premises arose out of his contract with Mrs. Greenberg. His failure to discharge such duty is shown by the testimony of Williams, the termite inspector for the Rose Exterminator Company. Such testimony showed that there were conditions of infestation found by Williams to exist, but not by Hastie; that there were other conditions, also found by Williams but not by Hastie, which by the use of reasonable care would lead the inspector to suspect infestation, to recommend further investigation and to open up such areas; and that the foregoing conditions were open and visible. This testimony shows that if Hastie had used due care in making his inspection, he would have seen all the conditions found by Williams to exist, and thus supports the inference that Hastie made his report in a negligent manner. (Cf. *Gagne* v. *Bertran* (1954) 43 Cal.2d 481, 491 [275 P.2d 15].) The court could, as it did, conclude that appellant's report was neither complete nor accurate.

### MEASURE OF DAMAGES

Although the record discloses that the trial court believed the measure of damages as to all defendants to be the decrease in the value of the property, actually its determination was based on the cost of repairs as testified to by the representative of the Rose Exterminator Company. The court adjusted the Rose cost of $3,740 down to $2,500 and then apparently added back in the original $300 withheld at the title company, to produce a judgment figure of $2,800 "which includes the sum of $300.00 deposited with the Title Insurance Company." However calculated, it is clear that this figure represents the cost of corrective work, which the court, after adjustments, determined to be reasonable.

Appellant Berendsen contends that the trial court incorrectly measured the damages, urging that the proper measure of damages is that laid down in *Gagne* v. *Bertran, supra,* 43 Cal.2d 481, 490-491, namely: the difference between the cost of the property to plaintiff and what the property was actually worth. But *Gagne* involves causes of actions for deceit and negligence. Berendsen's liability, as we pointed out earlier, is not predicated on his fraud or negligence, but on his obligations arising under the agreement of sale to pay for any repairs. Since the amount of damages awarded against Berendsen corresponds to the reasonable cost of repairs, we hold that the trial court applied the correct measure of damages against said defendant. The judgment against defendant Berendsen should therefore be affirmed.

We do not agree, however, that the same measure of damages can be applied against the defendant Hastie, as was apparently done. Hastie's liability is based on negligence, not on contract. The damages to be awarded against Hastie and in favor of Mrs. Greenberg are compensatory in nature. "For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.) We are of the opinion that as against the defendant Hastie, the correct measure of damages is based on the above code section and announced in *Gagne* v. *Bertran, supra.*

In the *Gagne* case, the plaintiffs contracted to buy two unimproved lots subject to a fill test to be made at the buyer's expense. They employed the defendant who had represented himself to be a soil tester but who never disclosed that he was neither a geologist nor a soil engineer. The defendant negligently reported that the fill went to a depth of 12 to 16 inches, whereas in places it was 3 to 6 feet deep. Relying upon the defendant's reports, the plaintiffs bought the lots and later sought recovery of additional costs incurred by them for foundations in excess of their contemplated costs. A judgment for the plaintiffs which measured damages by the difference between the actual cost of the foundation and what it would have cost had the representations been true was reversed by the Supreme Court. "[D]efendant's undertaking was limited to exercising due care to determine and report the extent of the fill, and the damages, whether for deceit or negligence, must be measured by the actual losses suffered because of the misrepresentation. [Citations.]

"In reliance on defendant's information plaintiffs purchased the property. If the property was worth less than they paid for it, defendant is liable for the difference. [Footnote omitted.] On the other hand, if the lots were worth what plaintiffs paid for them, plaintiffs were not damaged by their purchase, for even though they would not have bought the lots had they known the truth, they nevertheless received property as valuable as that with which they parted.

" . . . . . . . . . .

"The additional costs plaintiffs incurred in the installation of the foundation were not caused by defendant's misinformation, however, but by the physical condition of the land. . . . In the present case, plaintiffs have proved only that they were induced to commit themselves to a building venture and that the cost of the building exceeded the anticipated cost by $3,093.65. Given the decision to build, however, these costs would have been incurred whether or not defendant correctly reported the extent of the fill, and the question presented is, therefore, whether or not plaintiffs have proved that they suffered damage as a result of being induced to build on their property. This question is basically the same as the question whether or not they proved that they suffered damage as a result of being induced to buy the lots in the first instance." (*Gagne* v. *Bertran, supra,* 43 Cal.2d 481, at pp. 490-491.)

In the instant case, the purchase price was $42,500. The court permitted Berendsen on redirect examination to testify, over objection, that in his opinion as the owner, the market value of the property at the time of the sale was $45,000. This seems to have been an isolated bit of testimony and the record does not indicate that the court was then considering the issue of value. No other evidence of actual value appears. Although the court permitted all appellants to have the premises appraised by an appraiser of their own selection, we find no such expert opinion evidence in the record, and in fact no indication that such appraisal was made. The respondent failed to show, under the above code section and the *Gagne* case, that the value of that which she received was less than what she paid.

The cost of repairs was not as against Hastie the proper measure of damages. Respondent concluded the sale, relying on Hastie's inspection and report, but once she did so, the added expense of corrective work was due to the condition of the premises and not to Hastie's negligence. On this record, therefore, respondent has not proved damages against Hastie.

The judgment against the defendants Hastie and Hastie Real Estate Inspection and Repair, Inc. must be reversed but the findings of fact and conclusions of law pertaining to said defendants, insofar as they bear upon and determine the issue of their liability are correct and supported by the evidence and the law. The cause against such defendants, however, must be remanded for trial upon the issue of damages.

In the event that such trial may determine the existence of legal damages, we deem it necessary to set forth our further views on such determination and the nature of any ensuing judgment. Our discussion herein on the measure of damages indicates our conclusion that different measures of damages apply to the respective defendants. They apply independently. The liability of each defendant, Berendsen and Hastie, is separate and independent of the other. Any damages determined by the trial court to be recoverable against Hastie should not be reduced or modified because damages have been recovered against Berendsen.　　　　In *Anheuser-Busch, Inc.* v. *Starley* (1946) 28 Cal.2d 347, 349 [170 P.2d 448, 166 A.L.R. 198], it is stated: "Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded nor is the amount of the damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer. [Citations.]" (See also *Gersick* v. *Shilling* (1950) 97 Cal. App.2d 641, 650 [218 P.2d 583] ; *Peri* v. *Los Angeles Junction Ry. Co.* (1943) 22 Cal.2d 111, 131 [137 P.2d 441].) Any resultant judgment, therefore, if against Hastie and the corporation, will be rendered against them independently of the judgment against Berendsen and irrespective of whether or not the judgment against Berendsen is satisfied.

The judgment against the appellant Earl M. Berendsen is affirmed. The judgment against the appellants Harry H. Hastie and Hastie Real Estate Inspection and Repair, Inc. is reversed with directions that the trial court retry the issue of damages recoverable against said last two appellants in accordance with the views herein expressed. Respondent shall recover one-half of her total costs on appeal from the appellant Berendsen, and an additional one-fourth of her total costs on appeal from the appellants Hastie and Hastie Real Estate Inspection and Repair, Inc. All of the appellants shall bear their own costs on appeal.

Bray, P. J., and Tobriner, J., concurred.