[Civ. No. 19938. First Dist., Div. One. May 7, 1963.]

DARIO DeMARTINI et al., Plaintiffs and Respondents, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant and Appellant.

[Civ. No. 20051. First Dist., Div. One. May 7, 1963.]

DARIO DeMARTINI et al., Plaintiffs and Appellants, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Defendant and Respondent.

790

M. Mitchell Bourquin and William B. Boone for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendant and Appellant.

SULLIVAN, J.—We are presented with cross-appeals from a judgment reviewing a single administrative record. In 1 Civil No. 19938, the Department of Alcoholic Beverage Control (hereinafter called the Department) appeals from a judgment of the trial court ordering the issuance of a peremptory writ of mandate commanding the Department to vacate and set aside its decision that the off-sale general license of Dario DeMartini and Emilio J. Maionchi (hereinafter called the licensees) be suspended. In 1 Civil No. 20051, the licensees appeal from that part of the above judgment which commands the Department to take such further steps in the proceedings against them as are not inconsistent with the trial court's findings of fact and conclusions of law.

We observe that both the Department and the licensees also separately appeal from the peremptory writ of mandate issued pursuant to the judgment. Section 963 of the Code of Civil Procedure here applicable (Code Civ. Proc., § 1110) makes provision for appeals from judgments, orders or decrees but not from writs. (*Butler* v. *City & County of San Francisco* (1951) 104 Cal.App.2d 126, 128 [231 P.2d 75]; *Kindig* v. *Palos Verdes Homes Assn.* (1939) 33 Cal.App.2d 349, 355 [91 P.2d 645].) ██ Each of the attempted appeals from the peremptory writ of mandate must be dismissed.

On February 27, 1957, the Department filed an accusation in nine counts against the licensees doing business as the Liquor Mart, 264 Kearny Street, San Francisco. The first seven counts charged said licensees with selling to the same vendee on seven specified dates in August, September, October and November 1956, various brands of alcoholic beverages at retail at prices less than the so-called fair trade price. The eighth count charged that the licensees made sales and deliveries of alcoholic beverages to the vendee designated in the first seven counts and over the period of time embraced thereby, that is from August 28, 1956, through November 30, 1956, "pursuant to an order and did fail to accompany said orders with delivery orders." The ninth count charged that the licensees made sales and deliveries of alcoholic beverages to the vendee and over the period of time designated in the eighth count "pursuant to an order and failed to keep on file a copy of said delivery orders."

The acts set forth in all nine counts were charged as providing grounds for suspension or revocation of the licensees' license under article XX, section 22 of the California Constitution and section 24200, subdivision (a) of the Business and Professions Code.[1] It was also charged that additional grounds for suspension or revocation under section 24200, subdivision (b),[2] existed in that the sales set forth in the first seven counts were in violation of section 24755 and of rule 99(f) of the Department's rules (Cal. Admin. Code, tit. 4, § 99(f)).

In response to the Department's accusation, the licensees filed an amended notice of defense in which they: admitted that the sales allegedly made in the first seven counts of the accusation had been made at the prices therein alleged; denied that the "fair trade prices" alleged in said counts were stipulated or fixed in any fair trade contract; alleged that section 24755 and rule 99 were unconstitutional; alleged that the alcoholic beverages subject of said accusation "were not, and are not, in free and open competition with alcoholic beverages of the same general class produced by others within the meaning of the laws exempting price fixing from the public policy of the state"; that the fair trade contracts involved "were, and are, within the provisions of the Sherman Anti-Trust Act and the Cartright Act"; that rule 99 was violative of section 11374 of the Government Code; and that the allegedly fair trade prices were not supported by a valid contract but were the result of compulsory agreements.

---

[1] Unless otherwise indicated, all code references hereafter are to the Business and Professions Code.

Section 24200 in relevant part provides: "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: (a) When the continuance of a license would be contrary to public welfare or morals; but proceedings under this section upon this ground are not a limitation upon the department's authority to proceed under Article XX, Section 22 of the Constitution."

California Constitution, article XX, section 22 in relevant part provides: "The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, . . ."

[2] Section 24200 provides in relevant part: "The following are the grounds which constitute a basis for the suspension or the revocation of licenses: . . . (b) Except as limited by Chapters 11 and 12 of this division, the violation or the causing or the permitting of a violation by a licensee of this division, . . . or any rules of the department adopted pursuant to the provisions of this division, or any other penal provisions of law of this State prohibiting or regulating the sale . . . of alcoholic beverages or intoxicating liquors."

The hearing officer found in terms of the accusation that the allegations of all nine counts were true. The Department, adopting the proposed decision of the hearing officer but increasing the penalty recommended, suspended licensees' license for a total period of 45 days. The licensees appealed to the Alcoholic Beverage Control Appeals Board (hereinafter called the Appeals Board) which affirmed the Department's decision on the first eight counts but reversed it on the ninth count. A petition for writ of mandate was then filed by the licensees in the court below.

The trial court[3] found, so far as is pertinent here, that there was no substantial evidence: that the alcoholic beverages subject to the accusation were in fair and open competition with alcoholic beverages of the same general class produced by others; that the minimum retail prices of the beverages subject to the first seven counts[4] and the schedules filed with the Department "were fixed or agreed upon by the manufacturers or brand-owners thereof with the retail licensees party and signatory to the agreements aforesaid" or that said retail licensees were even consulted; that any retail licensee received anything of value from the manufacturers or brand owners who were parties to the agreements; or that the licensees wilfully or with intent to evade the rules or regulations of the Department failed to accompany delivery of the alcoholic beverages with a delivery order. The court concluded that in ordering the suspension of the license without finding that the alcoholic beverages subject of the accusation were in fair and open competition with those of the same class produced by others, the Department proceeded without and in excess of its jurisdiction and not as required by law; that the decision was not supported by the findings nor the findings by the evidence; and granted judgment accordingly, ordering issuance of a peremptory writ of mandate. This appeal followed.

It is the position of the Department that the findings of the trial court unfavorable to it are not supported by the

---

[3]The matter was submitted below on the petition, return, and record of the administrative proceedings had before the Department which included a transcript of the oral proceedings and certain documentary evidence received. The entire administrative file, toegther with the opinion of the Appeals Board, has been transmitted here.

[4]The finding did not extend to all items of alcoholic beverages involved. The court found there *was* substantial evidence that the minimum retail prices of three brands of beverages and the schedules filed with the Department were fixed and agreed upon between the manufacturers or brand owners and retail off-sale licensees.

administrative record and are therefore erroneous. Specifically, the Department claims that the evidence in such record establishes: (1) that the beverages involved were in fair and open competition; (2) that the minimum retail price schedules were part of the fair trade contracts[5]; (3) that the fair trade contracts were valid; and (4) that the licensees were guilty of a violation on the eighth count.[6] It is the position of the licensees that the findings of the trial court thus attacked were not erroneous and that the judgment below should be affirmed for the additional reason that the hearing officer failed to make findings as required by law that the alcoholic beverages in question were in fair and open competition with alcoholic beverages of the same general class produced by others.

The facts as disclosed by the administrative record can be briefly stated. All sales charged in the first seven counts were of distilled spirits and embraced various brands of bourbon whiskey, Scotch whiskey and gin. At the hearing, the licensees stipulated that they sold the particular beverages listed in such counts on the dates, to the persons and at the prices alleged therein. There were also received in evidence upon the offer of the Department and over the objections of the licensees,[7] certified copies of certain fair trade contracts and fair trade contract price schedules filed with the Department and covering in the aggregate all of the brands of distilled spirits subject of the foregoing sales.[8] The general effect of this documentary evidence was to establish the alleged minimum resale prices specified for the respective brands. There

[5]As pointed out above (see footnote 4) the relevant finding in the trial court was unfavorable to the Department on all but three items set forth in the accusation.

[6]The Department makes no argument on the ninth count which was reversed by the Appeals Board.

[7]It is unnecessary to detail the licensees' meticulous objections to each item of documentary evidence. Generally speaking, they were made on the grounds that the fair trade contracts were not in fact contracts because the parties thereto made no engagement to sell or buy to or from each other; that the contracts created no mutually binding obligations; that the parties signatory to the agreements did not in every instance agree to the fair trade prices revised and appended to the agreements after their execution; and that there was no showing that the beverages listed in the agreements were, at the time of the sales involved, in fair and open competition with alcoholic beverages of the same general class produced by others.

[8]The certification made under oath by the special assistant to the Director of Alcoholic Beverage Control states that such person is the "legal custodian of the fair trade contracts and fair trade contract price schedules required by law to be filed with the Department. . . ."

was also testimony introduced by the Department that during the period of time covered by the accusation, the fair trade prices filed with the Department were published in an industry publication and regularly distributed to all licensees at all levels of distribution in the Northern California trading area, including San Francisco where the licensees herein conducted their business. The licensees in the instant case stipulated at the hearing that the fair trade prices set forth in the various fair trade contracts and schedules received in evidence appeared in specified issues of the above publication. Thus, in summary, the administrative record shows that while the licensees herein admitted that they made the sales in question at the prices alleged and thus in effect at prices less than those set forth in the contracts and schedules, they denied that any "fair trade prices" had been effectively fixed or established by the contracts. This represents the hard core of the record upon which the hearing officer made his findings.

As we have pointed out, the trial court made several findings of its own declaring the insufficiency of the evidence to support the determination of the Department in a number of respects. It is important that we place the latter findings, now under attack, in proper focus and to that end set forth the rules which governed the trial court's function of review and now govern ours. ██ It must not be lost sight of that the Department is an agency upon which the Constitution has conferred limited judicial powers. (Cal. Const., art. XX, § 22.) The trial court therefore was not entitled to exercise its independent judgment on the effect and weight of the evidence as it is permitted to do when reviewing the findings of legislatively created statewide administrative agencies, but was simply called upon to determine whether the findings of the Department were supported by substantial evidence. (*Harris* v. *Alcoholic Beverage Control Appeals Board* (1963) 212 Cal. App.2d 106, 112 [28 Cal.Rptr. 74]; *Morell* v. *Department of Alcoholic Beverage Control* (1962) 204 Cal.App.2d 504, 507 [22 Cal.Rptr. 405]; *Benedetti* v. *Department of Alcoholic Beverage Control* (1960) 187 Cal.App.2d 213, 216-217 [9 Cal. Rptr. 525]; *Brice* v. *Department of Alcoholic Beverage Control* (1957) 153 Cal.App.2d 315 [314 P.2d 807]; *Oxman* v. *Department of Alcoholic Beverage Control* (1957) 153 Cal. App.2d 740, 744 [315 P.2d 484].) ██ "[T]he trial court in the mandate proceeding should have reviewed the evidence and the findings of the Department in the same fashion that

an appellate court reviews the findings of trial courts.''
(*Brice* v. *Department of Alcoholic Beverage Control, supra,*
153 Cal.App.2d 315, 323.) ■ It is now our function as it
was that of the court below to determine whether the findings
of the Department are supported by substantial evidence.
(*Harris* v. *Alcoholic Beverage Control Appeals Board, supra,*
212 Cal.App.2d 106, 113.) ■ In making this determi-
nation we must resolve all conflicts in the evidence in favor
of the Department's decision and indulge in all legitimate and
reasonable inferences to support it. (*Harris* v. *Alcoholic Bever-
age Control Appeals Board, supra,* 212 Cal.App.2d 106,
113; *Morell* v. *Department of Alcoholic Beverage Control,
supra,* 204 Cal.App.2d 504, 508; *Oxman* v. *Department of
Alcoholic Beverage Control, supra,* 153 Cal.App.2d 740, 744;
*Marcucci* v. *Board of Equalization* (1956) 138 Cal.App.2d
605, 608-609 [292 P.2d 264].) This is the proper scope of our
review as it was the proper scope of the trial court's review.
(*Harris* v. *Alcoholic Beverage Control Appeals Board, supra.*)
■ Neither this court nor the trial court ''may disregard or
overturn a finding of fact of the Department . . . for the reason
that it is considered that a contrary finding would have been
equally or more reasonable.'' (*Bowman* v. *Alcoholic Beverage
Control Appeals Board* (1959) 171 Cal.App.2d 467, 471-472
[340 P.2d 652].) We will therefore consider the Department's
contentions in the light of the foregoing rules.

■ The Alcoholic Beverage Control Act (Bus. & Prof.
Code, div. 9, §§ 23000-25762) contains special provisions (div.
9, ch. 10, §§ 24750-24757) regulating fair trade contracts rela-
lating to alcoholic beverages. Such provisions, though similar
to, are separate from the general provisions for fair trade con-
tracts found in the Fair Trade Act (§§ 16900-16905).

■ Section 24750 as it read during the period of time
covered by the accusation herein (and as it now reads) author-
ized fair trade contracts fixing the resale price of alcoholic
beverages bearing the trademark, brand or name of the pro-
ducer or owner and in fair and open competition with others
of the same general class.[9] Section 24755 as it read during

---

[9]Section 24750 provides: ''No contract relating to the sale or resale of
any alcoholic beverage which bears, or the label or container of which
bears, the trade-mark, brand, or name of the producer or owner of the
alcoholic beverage and which is in fair and open competition with alco-
holic beverages of the same general class produced by others violates any
law of this State by reason of either of the following provisions which
may be contained in such contract:

the same period of time required all retail sales of distilled spirits to be made pursuant to fair trade contracts executed pursuant to chapter 10 (§§ 24750-24757) and prohibited any violations of such contracts.[10] Similar requirements and prohibitions obtain under the statute now in effect, as we point out below. Also applicable to the instant case are subdivisions (a), (b) and (f) of former rule 99 of the Department (Cal. Admin. Code, tit. 4, § 99, subds. (a), (b) and (f)) as said rule and subdivisions thereof read at the time covered by the accusation before us. Such subdivisions, as they then read, provided in substance that no manufacturer, manufacturer's agent, wholesaler or rectifier was permitted to sell distilled spirits in containers bearing brands or names of owners except pursuant to fair trade contracts; that copies of such fair trade contracts should be filed with the Department, together with copies of minimum resale price schedules; and that no licensee should sell alcoholic beverages at retail at a price less than the minimum resale price fixed by such fair trade contract.[11]

The fair trade provisions of the Alcoholic Beverage Control

---

"(a) That the buyer will not resell the alcoholic beverage except at the price stipulated by the vendor.

"(b) That the producer or vendee of the alcoholic beverage require, upon the sale of the alcoholic beverage to another, that the purchaser agree that he will not, in turn, resell except at the price stipulated by the producer or vendee."

[10]Section 24755, at the times here involved, read as follows: "All distilled spirits sold at retail shall be, and any other alcoholic beverage may be, sold pursuant to a contract executed pursuant to this chapter, except that Chapter 11 shall govern the sale of wine in all cases in which that chapter is applicable. No licensee shall violate any of the provisions of any such contract."

The foregoing section was repealed in 1961 (Stats. 1961, ch. 635, § 3) and a new section bearing the same number added (Stats. 1961, ch. 635, § 4), which, in respect to distilled spirits bearing the brand, trademark or name of the owner or person in control, prohibits any retail sale for consumption off the licensed premises unless a minimum retail price has first been filed with the Department pursuant to the section and further prohibits any sale by an off-sale licensee "at any price less than the effective filed price."

[11]Former rule 99, subdivisions (a), (b) and (f) in relevant part provided: "(a) No manufacturer, manufacturer's agent, wholesaler or rectifier shall sell distilled spirits the containers of which bear labels stating the brand or name of the owner or producer, in this State, except pursuant to a fair trade contract, as provided for by Sections 24750 to 24755 of the Alcoholic Beverage Control Act.

"(b) Every manufacturer, manufacturer's agent, wholesaler, or rectifier licensed in this State who owns or controls a brand of distilled

Act were upheld as a valid and constitutional exercise of the police power in *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141 [346 P.2d 737]. As the court points out in such case, the above provisions of the act in effect constitute a fair trade act for alcoholic beverages, provide a statutory plan for fixing retail prices, and in the case of distilled spirits, impose a system of mandatory fair trading.[12] Under the above law, therefore, the licensees in the instant case were prohibited from selling distilled spirits at retail except at prices fixed in fair trade contracts.

### *Validity of fair trade agreements.*

As we have pointed out, the Department introduced in evidence at the administrative hearing seven fair trade contracts which in the aggregate fixed the minimum retail prices for all of the various brands of bourbon whiskey, Scotch whiskey and gin involved in the first seven counts.[13] These contracts are variously entitled "California Fair Trade Contracts," "Fair Trade Agreements," "Retailer's Form of California Fair Trade Contract," and, in one instance, "Wholesaler's Form of California Fair Trade Contract." Generally speaking, they were entered into on the one hand by "the seller in California of distilled spirits," or the owner of the trademark, brand or name, or by a party similarly described

spirits, or who is properly authorized to fair trade a brand of distilled spirits in this State, shall file with the department a copy of a fair trade contract, or a notice of the amendment of an existing fair trade contract, and four copies of minimum resale price schedules. . . .

"(f) No licensee shall advertise or offer for sale, or sell, alcoholic beverages at retail at a price less than the stipulated minimum resale price provided for by a fair trade contract filed with the department pursuant to this rule."

(This rule has been revised and recast. As presently in effect, it provides *inter alia* for the filing of a "Distilled Spirits Minimum Retail Price Schedule" and prohibits sales by off-sale licensees at a price less than that filed with the Department unless written permission is granted.)

[12]*Allied Properties* was decided on November 30, 1959, thus disposing of the licensees' contention made in their amended notice of defense filed in the administrative proceedings on November 6, 1957, that section 24755 and rule 99 were unconstitutional. Although the licensees restated this contention in their petition for writ of mandate filed March 29, 1960, subsequent to the *Allied Properties* decision, they have not pressed such contention before us.

[13]Items involved were: White Horse Scotch, Old Charter straight bourbon, Jim Beam straight bourbon, Paul Jones blended whiskey, Old Crow straight bourbon, Johnny Walker Red Label Scotch whiskey, Old Hermitage blended whiskey, I. W. Harper bonded bourbon, Canada Dry blended whiskey and Canada Dry Gin.

and, on the other hand, by a retailer or a retailer referred to as a "purchaser," and, as indicated above, in one instance by a wholesaler.[14] The licensees herein were not parties to any of the seven fair trade contracts, nor was it necessary for them to be parties in order to be subject to the system of mandatory fair trading provided by the statutes heretofore mentioned. (See §§ 24752, 24755, rule 99; *Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 141; cf. *Downs* v. *Benatar's Cut Rate Drug Stores* (1946) 75 Cal.App.2d 61 [170 P.2d 88] involving the general Fair Trade Act.)

All of the above fair trade contracts are substantially the same. They recite that the contracting party denominated "seller" or "owner" is the seller in California of distilled spirits bearing on their containers or labels the names, trademarks or brands of the producers or owners thereof and that such products are in fair and open competition in California with products of the same general class produced by others. In attached price lists, they set forth minimum retail resale prices for the products involved and further provide that the owner or seller may from time to time revise such prices or eliminate or add one or more products from or to the schedules or lists upon giving written notice to the retailer. They also provide: that the retailer shall not sell, advertise for sale, or offer to sell any of the listed products at prices below those specified[15]; that the retailer shall not give any article of value or grant any discount other than that allowed by the seller resulting in a price below those specified; that in the event of breach or threatened breach by either party, the other shall be entitled to invoke the remedy of injunction in addition to any other available legal remedies; and that the agreement may

---

[14]This wholesaler's form of fair trade agreement was introduced in evidence apparently because its attached price list fixed not only the "owners'" prevailing prices to wholesalers and retailers but also the "owners'" resale prices to consumers in California.

[15]Illustrative of the retailer's covenant is the following paragraph from the fair trade agreement fixing the fair trade price for White Horse Scotch Whiskey, an item alleged in the first count of the accusation: "Purchaser agrees that he will not sell advertise for sale or offer to sell any person, firm or corporation, any of the products named in the Resale Price Schedule as now filed or hereafter amended at prices below those therein specified. Seller further agrees that he will not use any of the products listed in any free deals, or make or offer to make any refunds discounts or concessions, or make or offer to make combination sales or transactions which shall result in a reduction of the resale prices therein established."

be terminated at any time on written notice by either party to the other.[16]

Thus a number of circumstances make it clear that the agreements in evidence were executed pursuant to the fair trade provisions of the Alcoholic Beverage Control Act: They are entitled fair trade agreements; they relate to the sale and resale of distilled spirits bearing on their label or container the trademark, brand or name of the producer or owner thereof; the products covered by the agreements are declared to be those in fair and open competition with products of the same general class produced by others; minimum retail resale prices for such products are stipulated by the seller or owner; the agreements contain provisions that the buyer will not resell except at the stipulated price; the agreements bear endorsements of filing with the Department or its predecessor agency, the State Board of Equalization; and finally, as already pointed out (see footnote 8, *ante*), they have appended to them sworn official certifications that they are copies of fair trade contracts required by law to be filed with the Department. We are therefore satisfied that they are agreements authorized by section 24750.

The licensees contend that the agreements do not comply with the requirements of section 24750. They argue that the parties thereto have not contracted for the sale or resale of any alcoholic beverages, that the agreements are directly between a manufacturer or producer and the ultimate retailer, and that in most instances such persons, under the Alcoholic Beverage Control Act, cannot enter into a valid contract for the purchase and sale of alcoholic beverages.

Section 24750, already set forth (see footnote 9, *ante*) states that "[n]o contract *relating* to the sale or resale of any alcoholic beverage" (italics added) described in the section "violates any law of this State by reason" of the inclusion therein of a provision "[t]hat the buyer will not resell the alcoholic beverage except at the price stipulated by the vendor." The contracts authorized by the statute are those "relating" to the sale or resale of the specified beverages. The statute does not require that they be contracts *for* the purchase and sale of such beverages. The contracts before us *relate* to the sale of

---

[16]Although there is a variation of language among all agreements, the above is a fair summary of their salient features. It is to be noted that the reserved right in the seller to revise the schedule of prices and the agreement of the buyer to be bound thereby are present in all contracts.

alcoholic beverages and provide that "the buyer will not resell the alcoholic beverage except at the price stipulated by the vendor."

It is readily seen that this type of "vertical" agreement becomes an effective instrument subserving the legislative purpose of preventing price cutting at the retail level, reducing excessive purchases of alcoholic beverages and thus promoting temperance in their use and consumption. (*Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 141; *Seagram Distillers Co.* v. *Corenswet* (1955) 198 Tenn. 644 [281 S.W.2d 657, 660].) It is only "horizontal" agreements "between producers or between wholesalers or between retailers as to sale or resale prices" (§ 24753) that the fair trade provisions of the Alcoholic Beverage Control Act interdict. It is not necessary to the accomplishment of the above legislative objectives that fair trade agreements be at the same time agreements for the purchase and sale of the liquors involved or that the parties to said agreements stand in a direct and immediate seller-buyer relationship to each other. While the language of the statute is sufficiently comprehensive to embrace fair trade agreements which are at the same time agreements of purchase and sale, it gives no indication that it is operable only with respect to such agreements.

Although we have found no California case on the point, nevertheless the contention now made by the licensees that the contracts must be between parties standing in a direct and immediate vendor-vendee relationship has been made and rejected in other jurisdictions. In *General Electric Co.* v. *Kimball Jewelers, Inc.* (1956) 333 Mass. 665, 672 [132 N.E.2d 652, 656], the court construing provisions of the Fair Trade Law of Massachusetts, almost identical with the general Fair Trade Act of this state (§ 16902) and with section 24750 here under consideration, said: "A fair trade contract may be made between a producer and a retailer who do not trade directly with each other. The statute applies not only to contracts between the parties, but to any contract 'relating to the sale or resale of a commodity', whether the sale is between the parties or not, because the object is to protect the trade mark, brand or name of the producer or owner, whoever makes the sale. [Citations.]" In *Kinsey Distilling Sales Co.* v. *Foremost Liquor Stores, Inc.* (1958) 15 Ill.2d 182, 197-198 [154 N.E.2d 290, 297-298], involving sales of brands of whiskey,

the court relied upon the *General Electric Co.* case to reach the same conclusion with respect to the provisions of the Illinois Fair Trade Act which were practically the same as those in the Massachusetts statute and in section 24750 applicable to the instant case. In *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* (1936) 363 Ill. 610, 612 [2 N.E.2d 940, 941], the Illinois Supreme Court also observed that contracts were in conformity with the Fair Trade Act of that state which had been executed "between plaintiff and certain numerous Illinois retailers, although plaintiff does not sell beverages direct to any retailer." (See also *Seagram Distillers Co.* v. *Corenswet, supra,* (1955) 198 Tenn. 644 [281 S.W.2d 657, 659].)

In addition we observe that all of the agreements upon which the accusation was founded were accepted for filing by the Department or its predecessor agency, the State Board of Equalization, as fair trade agreements authorized by the applicable statute (§ 24750) required to be filed by administrative regulation (rule 99(b)) and, under the law (§ 24755), controlling the price of all retail sales of the distilled spirits involved. The Department asserts that since the inception of fair trading in alcoholic beverages similar contracts "have been uniformly filed by the liquor control authorities and have been the subject of enforcement by these authorities." Although this is not a matter contained in the instant record, we note that the agreements which are in the record reflect the uniformity thus asserted and indicate to us that over the period of years covered by them (1947 to 1956), the Department appears to have been consistent in accepting for filing fair trade agreements between producers and retailers, even though such parties were not and under applicable regulations could not be in lawful seller-buyer relationships. While this contemporaneous administrative construction of the statute authorizing fair trade agreements (§ 24750) and of the regulation requiring their filing with the Department (rule 99(b)) by the agency charged with their enforcement and interpretation is not necessarily controlling, it "is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Coca-Cola Co.* v. *State Board of Equalization* (1945) 25 Cal. 2d 918, 921 [156 P.2d 1] ; see also *Select Base Materials, Inc.* v. *Board of Equalization* (1959) 51 Cal.2d 640, 647 [335 P.2d 672].)[17]

---

[17] Our attention has also been directed to the opinion of the Appeals

 The licensees further contend that the agreements relied upon by the Department are void for lack of consideration and mutuality. The gist of this argument is that the manufacturers did not undertake to sell to the retailers and the latter did not obligate themselves to buy or accept from the manufacturer any alcoholic beverages. Here again the licensees ignore or misconstrue the real nature and purpose of the agreements. As we have pointed out, they are agreements establishing fair trade prices and not agreements of sale. Thus *California Refining Co.* v. *Producers Refining Corp.* (1938) 25 Cal.App.2d 104 [76 P.2d 553] and *J. A. Folger & Co.* v. *Williamson* (1954) 129 Cal.App.2d 184 [276 P.2d 645], relied upon by the licensees, dealing with contracts of sale reserving the right in either party to deliver or accept the subject property according to his own wish, want or desire and therefore illusory in character and void, are not determinative of the question here raised.

When the true nature of the instant agreements is considered, it is clear that they are supported by a valid and sufficient consideration. Mutual benefits are derived therefrom by the contracting parties. The manufacturer or producer obtained protection for his trademarks and brands; the retailer is made secure from cutthroat competition. More importantly, the retailer is benefited by entering into the agreement in the first place, since without a fair trade agreement the distilled spirits subject thereof could not be sold at retail. (§ 24755.) A number of decisions in other jurisdictions have rejected the licensees' contention and have held that fair trade agreements similar to those before us are supported by a sufficient consideration. (*Houbigant Sales Corp.* v. *Woods Cut Rate Store* (1937) 123 N.J.Eq. 40 [196 A. 683, 686-687]; *General Electric Co.* v. *Kimball Jewelers, Inc.* (1956), *supra,* 333 Mass. 665, 670-671 [132 N.E.2d 652, 654-655]; *Kinsey Distilling Sales Co.* v. *Foremost Liquor Stores, Inc.* (1958), *supra,* 15 Ill.2d 182, 197 [154 N.E.2d 290, 297]; *Seagram-Distillers Corp.* v. *Old Dearborn Distributing Co.* (1936), *supra,* 363 Ill. 610, 613 [2 N.E.2d 940, 942]; *Seagram Distillers Co.* v. *Corenswet* (1955), *supra,* 198 Tenn. 644 [281 S.W.2d 657, 660-661]; *General Electric Co.* v. *S. Klein-On-the-Square* (N.Y. 1953) 121 N.Y.S.2d 37, 45-46 and see cases collected at page 46.)

Board in an unrelated case (*Appeal of Moeslein,* No. AB-794) in which it was held that there was no requirement that fair trade contracts be also contracts for the sale of distilled spirits.

We hold therefore that the fair trade agreements received in evidence conformed to the requirements of section 24750, that they were supported by a consideration, valid and enforceable, and that the trial court's determination to the contrary that nothing of value was received by the retailers signing the agreements was erroneous in the light of the administrative record.

### Evidence of fair and open competition.

Fair trade agreements authorized by section 24750 must pertain to an alcoholic beverage bearing the trademark, brand or name of the producer or owner "which is in fair and open competition with alcoholic beverages of the same general class produced by others. . . ." We have already pointed out that in the instant case certified copies of fair trade contracts and fair trade contract price schedules were received in evidence over the objection of the licensees.[18] The Department did not introduce evidence in addition to the above documentary evidence that the products involved in the sale were in fair and open competition. No evidence was introduced or offered by the licensees that the products were *not* in such competition. It is the contention of the licensees, as it was the conclusion of the trial court, that there is no substantial evidence in the record that the alcoholic beverages in question were in fair and open competition with those of the same general class produced by others. As we stated earlier, our inquiry is not with respect to the trial court's finding, but whether such evidence exists in the administrative record.

The "fair and open competition" clause found in section 24750 appears in almost identical language in the corresponding section of the general Fair Trade Act (§ 16902). Indeed subdivision (a) of section 16902 and section 24750 employ precisely the same language except for the use of the word "commodity" in the former and the words "alcoholic beverage" in the latter. Commenting on such clause in section 16902, the Supreme Court in *Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores* (1955) 45 Cal.2d 881, 889 [291 P.2d 936], observed: "The clear language of the clause in question contemplates that there are on the market commodities produced by others which are so similar in character to the fair traded items that they pro-

---

[18]Rule 99(b) required the filing with the Department of a copy of the contract and four copies of minimum resale price schedules. Attached to each of six of the contracts in evidence as part of the exhibits is a schedule of prices entitled "Distilled Spirits Fair Trade Schedule."

vide competition which is not hampered by unlawful trade restraints." We must therefore determine whether such competitive conditions contemplated by the statute are disclosed by the instant record.

As pointed out earlier in this opinion, the system of mandatory fair trading established by the Alcoholic Beverage Control Act prohibits the sale at retail in this state of any distilled spirits unless pursuant to a fair trade contract executed pursuant to section 24750. Rule 99(b) requires the filing of all such contracts with the Department. All of the fair trade contracts and fair trade contract price schedules received in this case were officially certified as those required by law to be filed with the Department. (See footnote 8, *ante*.) The only contracts and schedules which the Department is authorized to accept for filing are those so executed, which thereby constitute the legal and functional basis for fair trading distilled spirits. The Department is invested with the power of administering and enforcing the liquor laws of this state (Cal. Const., art. XX, § 22; §§ 23049-23051) and of carrying out the legislative purposes and objectives of the Alcoholic Beverage Control Act (§ 23001). Vital to such enforcement and to the achievement of such purposes is the administration and enforcement of the fair trade provisions of the act. (*Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d 141, 147-148.) It is to be presumed therefore that such "official duty has been regularly performed" (Code Civ. Proc., § 1963, subd. 15) and that the Department, employing its administrative expertise and satisfying itself that the fair trade contracts filed with it were in fact what they purported to be, determined, in accepting them for filing, that they were in fact entered into pursuant to section 24750 and that the products to which they related were in fair and open competition with other distilled spirits of the same general class.

Two other presumptions are also applicable. It is to be presumed that the transactions embodied in the fair trade agreements "have been fair and regular" (Code Civ. Proc., § 1963, subd. 19) and that comporting with such presumption the agreements were not designed to impose unlawful restraints on open competition in the market. (Cf. *Scovill Mfg. Co.* v. *Skaggs etc. Drug Stores, supra,* 45 Cal.2d 881, 890.) It is also to be presumed "[t]hat the law has been obeyed." (Code Civ. Proc., § 1963, subd. 33.) If the products covered

by the agreements in question had *not* been in fair and open competition, the agreements would have offended against the Cartwright Antitrust Law (§§ 16700-16758) and in particular section 16720 thereof.

In our view all of the three foregoing presumptions have a joint and coordinate application to the instant case. ■ It is of course well settled that they constitute evidence in the record. (Code Civ. Proc., § 1957; *Smellie* v. *Southern Pac. Co.* (1931) 212 Cal. 540 [299 P. 529].) It is significant here that the licensees have introduced no evidence whatsoever to controvert them. ■ The effect of the presumptions is to furnish an evidentiary basis for the conclusions that the contracts on which the present charges are predicated are in accord with section 24750 and relate to products which are in fair and open competition with products of the same general class produced by others.

However, we must reject two additional arguments advanced by the Department to support its determination of fair and open competition. ■ It is asserted, but without any citation of authority, that the recitals contained in all the contracts to the effect that the alcoholic beverages covered therein were in fair and open competition are proof of the fact that they actually were. Obviously, the recitals are hearsay (19 Cal.Jur.2d, Evidence, § 381, p. 113; *People* v. *Dewson* (1957) 150 Cal.App.2d 119, 133 [310 P.2d 162]). While under section 11513, subdivision (c) of the Government Code, which was applicable to the proceedings before the Department (Gov. Code, § 11501) ''[h]earsay evidence may be used for the purpose of supplementing or explaining any *direct* evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions'' (italics added), the record before us does not disclose any basis for the consideration of such hearsay recitals. There is no *direct* evidence for them to supplement, since the only evidence supportive of the conclusion of fair and open competition is the *indirect* evidence of the foregoing presumptions (Code Civ. Proc., § 1957). Nor do the recitals fall within any of the recognized exceptions to the hearsay rule so as to constitute hearsay admissible over objection in civil actions.

■ The Department also asserts that evidence of fair and open competition can be supplied by judicial notice and invites this court to recognize as one of common knowledge the fact that there are ''countless brands of distilled spirits

. . . which are sold in California and which vie with each other for public favor.'' In our view, the existence and operation throughout this state of countless retail outlets selling to the public alcoholic beverages for consumption off the licensed premises *is* a matter of common knowledge. It is commonly known that such outlets consist of markets, supermarkets, grocery stores, delicatessens, food stores, drugstores, cigarstands, and the omnipresent liquor store selling such commodity exclusively; that such outlets are not confined to strictly shopping localities but are found in hotels, public buildings, transportation terminals and almost every area of our society except where expressly excluded by law; and that whatever the area or type of business establishment, such outlets merchandise numerous brands of bourbon whiskey, Scotch whiskey and gin which, including the brands here involved, are offered to the public throughout a state-wide marketing area.

 The courts of this state may take judicial notice of matters of common knowledge within the limits of their jurisdiction. (*Varcoe* v. *Lee* (1919) 180 Cal. 338, 344-345 [181 P. 223] ; see also, for example, *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198] ; *Paraco, Inc.* v. *Department of Agriculture* (1953) 118 Cal.App.2d 348, 353 [257 P.2d 981] ; *Bowker* v. *Baker* (1946) 73 Cal.App.2d 653, 665 [167 P.2d 256] ; *Galloway* v. *Moreno* (1960) 183 Cal. App.2d 803, 809 [7 Cal.Rptr. 349].) An appellate court may properly take judicial notice of any matter of which a trial court may take judicial notice (*Varcoe* v. *Lee, supra,* 180 Cal. 338, 343) and the failure or refusal of a trial court to take judicial notice of a fact or matter does not preclude an appellate court from giving proper effect thereto. (*People* v. *Tossetti* (1930) 107 Cal.App. 7, 12 [289 P. 881] ; *Ward Mfg. Co.* v. *Miley* (1955) 131 Cal.App.2d 603, 609 [281 P.2d 343] ; *Varcoe* v. *Lee, supra*; *Rogers* v. *Cady* (1894) 104 Cal. 288, 290 [38 P. 81, 43 Am.St.Rep. 100].)

 In the instant case, however, the court below merely reviewed the evidence in the same way as an appellate court. (See *Brice* v. *Department of Alcoholic Beverage Control, supra,* 153 Cal.App.2d 315, 323 and other authorities *supra.*) At the administrative hearing the doctrine of ''official'' notice, performing in the administrative process the same role as judicial notice in the courts, could have been invoked but only according to procedural rules. Under section

11515 of the Government Code, the Department in reaching its decision was permitted to take official notice, among other things, of "any fact which may be judicially noticed by the courts of this State" providing it follows required procedure.[19] The record before us does not disclose that official notice was taken of what the Department now claims is a matter of common knowledge, namely the existence of countless competing brands of distilled spirits throughout the state. We find nothing in the record that the Department invoked such official notice or that the hearing officer proposed to take such notice and that these licensees were informed to that effect.

If we were presently reviewing in the usual manner the record of a court of original jurisdiction we would unhesitatingly give effect through judicial notice to the matter of common knowledge referred to above. However, as we have already made plain, we review the administrative record and are of the opinion that the procedural restrictions mentioned above persist here. We do not think that under the guise of judicial notice we can incorporate into the administrative record a matter which was not officially noticed by the Department. In the present case, this produces an absurd and unrealistic result calling for a more adequate use of judicial notice. (See 9 Wigmore on Evidence (3d ed.) § 2583, p. 580 et seq.) We feel, nevertheless, that the position we take is more consonant with the principles defining scope of review and with the concepts of fair play that underlie the administrative process.

We hold therefore, although only on the scant evidence of the presumptions, that there is substantial evidence in the record that the alcoholic beverages covered by the contracts were in fair and open competition. Our conclusion is not reluctantly made in view of the failure of the licensees to offer any evidence at all on this issue.

Finally, the licensees argue that rule 99 itself nullified fair and open competition; that it effectively foreclosed competition for at least 45 days; and that by permitting the filing of amendments to meet competitive prices, it preserved

---

[19]Government Code section 11515 in relevant part states: "Parties present at the hearing shall be informed of the matters to be noticed, and those matters shall be noted in the record, referred to therein, or appended thereto. Any such party shall be given a reasonable opportunity on request to refute the officially noticed matters by evidence or by written or oral presentation of authority, the manner of such refutation to be determined by the agency."

the status quo of the market.[20] As we have pointed out, rule 99 regulates the filing of contracts and minimum retail resale prices and of revisions of such prices. Obviously the filing requirement is designed to give notice to the department and to the retailers who must sell according to the prices. We fail to see how this rule per se closes competition. Any authorized person can file the contracts and the prices. Meeting competitive prices by filing amendments would seem to us to have the effect of enhancing rather than curtailing competition. If the licensees herein are complaining about the rule in operation, they have produced no evidence supporting the complaints. Moreover, as the court stated in the *Scovill* case, *supra*, the expression " '[f]air and open' relates only to the manner of competing, not to the results." (45 Cal.2d at p. 889.)

*Sufficiency of the findings on the first seven counts.*

The findings on all of the first seven counts were in the same form and expressed in terms of the accusation.[21] The licensees, while conceding that under the Administrative Procedure Act (Gov. Code, § 11500 et seq.) findings may be stated in the language of the pleadings or by reference thereto (§ 11518), contend that such findings are insufficient where they do not allege a fact or circumstance necessary to support the determination of the administrative agency. In the instant case they claim that there is no finding that the "alcoholic beverages, subject of the Accusation . . . were in fair and open competition with alcoholic beverages of the same general class produced by others. . . ."

---

[20]That portion of rule 99(b) relevant here provided as follows: "Amendments to such contracts affecting changes in minimum resale prices for a brand, type and size of container previously filed shall be filed with the department on or before the fifteenth day of any calendar month to become effective on the first day of the second succeeding calendar month. To meet competitive prices for similar distilled spirits, amendments to fair trade contracts may be filed with the department on or before the fifteenth day of any calendar month and such amended competitive price shall become effective at the same time the competitive price for similar distilled spirits shall become effective."

For portions of rule 99 heretofore set forth, see footnote 11, *supra*.

[21]For example, the finding with respect to Count I was as follows: "It is true that on or about August 28, 1956, the above-named licensee, at the above-mentioned premises, did sell alcoholic beverages, to-wit, Scotch Whiskey, at retail to the W. P. Fuller Company, 301 Mission Street, San Francisco, at a price less than the stipulated minimum resale price provided for in a fair trade contract duly filed with the Department of Alcoholic Beverage Control as follows; , , ," Description of brands and prices follows.

The necessity for findings in the instant case rests upon the statutory requirement of the Administrative Procedure Act. Section 11518 of the Government Code, here applicable, provides in part: "The decision shall be in writing and shall contain findings of fact, a determination of the issues presented and the penalty, if any. The findings may be stated in the language of the pleadings or by reference thereto." In *Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 872 [206 P.2d 355] in which the provisions of the above act were considered, although not applicable to the administrative agency there involved, the court observed: "Although administrative findings must conform to the statutes governing the particular agency, they need not be stated with the formality required in judicial proceedings [citations]. In connection with the action of an administrative board, the fact that certain action is taken or recommendation made may raise a presumption that the existence of the necessary facts was ascertained and found [citations]."

In the instant case, the licensees, contrary to the tenor of their present contention, were not charged with selling alcoholic beverages which were in fair and open competition. They were charged with violations of section 24755 and rule 99, that is selling alcoholic beverages "at a price less than the stipulated minimum resale price provided for in a fair trade contract duly filed with the Department. . . ." The licensees admitted the sales but in effect denied that the fair trade prices were stipulated in any contract or schedule filed as required by law. The hearing officer found against the licensees on this issue and his finding is supported by substantial evidence. Administrative procedure permitted the licensees to present new matter by way of defense. (Gov. Code, § 11506, subd. (a)(5).) In their amended notice of defense they objected to the sufficiency of the allegations of the accusation upon the ground, *inter alia*, that the alcoholic beverages subject thereof were not in fair and open competition. While this appears to have been framed as an objection to the pleading, nevertheless even if it is regarded as an affirmative defense, the licensees offered no evidence whatsoever in support of it. We are of the view therefore that the findings stated in the language of the pleadings were sufficient. They stated that the licensees had made the sales at less than the stipulated resale price, that the price was set forth in a fair trade contract and that such contract had been

duly filed with the Department. These findings were sufficient to support the "Determination of Issues Presented"[22] namely that the licensees "violated Section 24755 . . . and Rule 99(f)." No express finding was required that the products covered by the fair trade contracts were in fair and open competition. The findings made neither impede judicial review nor fail to apprise the licensees of the reason for the action taken against them. (See *Swars* v. *Council of City of Vallejo, supra*, 33 Cal.2d 867, 871, 873.)

Nevertheless, assuming *arguendo*, the necessity of a finding that the alcoholic beverages covered by the fair trade contracts and involved in the sales here under review were in fair and open competition, the licensees cannot prevail for two reasons: First, the only evidence on this question consisting of the presumptions already discussed was that such distilled spirits *were* in fair and open competition. The licensees introduced no contrary evidence. As we observed in *Greenberg* v. *Hastie* (1962) 202 Cal.App.2d 159, 173-174 [20 Cal.Rptr. 747], a party "cannot complain of a lack of finding, where, if made, it would have necessarily been against him. (*Miller* v. *Ambassador Park Syndicate* (1932) 121 Cal.App. 92, 97 [9 P.2d 267]; *Arsenian* v. *Meketarian* (1956) 138 Cal.App.2d 627, 633 [292 P.2d 293].)"

Secondly, the findings on all of the first seven counts state that the sales were made at prices less than the minimum resale price provided for in fair trade contracts "duly filed" with the Department. As we have already explained, the fair trade contracts involved could not conform to the requirements of section 24750 and could not be filed as required by rule 99(b) unless the alcoholic beverages covered by them were in fair and open competition. The finding that the alcoholic beverages were in fair and open competition can therefore be reasonably implied from the finding that the fair trade contracts were duly filed. In *Greenberg* v. *Hastie, supra*, 202 Cal.App.2d 159, 173 we quoted from *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593] as follows: " '[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary

---

[22]In *Jones* v. *Maloney* (1951) 106 Cal.App.2d 80, 89-90 [234 P.2d 666], this court said that such "determination" was comparable to a trial court's "conclusions of law."

implication from the express findings which are made." We find no obstacle to the application of this principle to findings in administrative proceedings. ▮ Paraphrasing the language of the *Swars* case quoted by us above, the fact that the hearing officer in the instant case found that the fair trade contracts were duly filed raises the presumption that the fact of "fair and open" competition was ascertained and found. (See *Swars* v. *Council of City of Vallejo, supra,* 33 Cal.2d 867, 872.)

*The eighth count.*

▮ The hearing officer found that, as charged in Count VIII, the licensees sold and delivered alcoholic beverages to a named vendee "pursuant to an order and did fail to accompany said orders with delivery orders." This finding is substantially supported by the testimony of Agent Reed to the effect that Emilio Maionchi, one of the licensees, admitted to him that the deliveries in question had not been accompanied with delivery orders or invoices. The Department determined that the foregoing established a violation of its rule 17(e).[23] It is clear that such violation is established by substantial evidence. Indeed the licensees produced no contrary evidence. The trial court, on the other hand, found that there was no substantial evidence that the licensees "willfully or with intent to evade the rules" failed to accompany the deliveries with delivery orders. The record establishes a violation of rule 17(e) and thus of section 24200, subdivision (b). (See footnote 1, *supra*.) ▮ There is no requirement either in the above statute or the above rule that the delivery of liquor without an accompanying delivery order be wilfully or intentionally done. (*Mercurio* v. *Department of Alcoholic Beverage Control* (1956) 144 Cal.App.2d 626, 630 [301 P.2d 474].) The trial court's finding was error.

We have concluded therefore that the decision of the Department here under review is supported by substantial evidence; that there was no prejudicial abuse of discretion

[23]Rule 17(e) as it then read provided: "(e) No alcoholic beverage shall leave the premises of an off-sale licensee for delivery to a consumer, except pursuant to an order previously received by such licensee. Such alcoholic beverages shall be accompanied by a delivery order, which order must state the quantity, brand, proof, and price of such alcoholic beverages, and the name and address of the consumer purchaser, and shall have printed or stamped thereon the name and address of such off-sale licensee. A copy of such order shall be kept on file by the off-sale licensee for a period of two years after the date of delivery."

and the Department proceeded in the manner required by law; and that the findings and conclusions of the trial court to the contrary were erroneous. Our disposition of the issues raised in No. 19938 renders unnecessary any separate discussion of the matters raised in No. 20051.

The attempted appeal by the Department in No. 19938 and the attempted appeal by the licensees in No. 20051 from the peremptory writ of mandate issued pursuant to the judgment entered on March 15, 1961, are, and each of them is, hereby dismissed. The judgment is reversed with instructions to the trial court to enter judgment denying the petition for a writ of mandate. The Department shall recover costs on both appeals.

Bray, P. J., and Devine, J.,* concurred.

The petitions for a rehearing were denied June 3, 1963, and the petitions of plaintiffs and respondents, and plaintiffs and appellants for a hearing by the Supreme Court were denied July 3, 1963. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.