[S. F. No. 21919. In Bank. Apr. 15, 1965.]

MALCOLM E. HARRIS, as Director of the Department of Alcoholic Beverage Control, Plaintiff and Appellant, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Defendants and Respondents.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and Wiley W. Manuel, Deputy Attorney General, for Plaintiff and Appellant.

Charles P. Just, Joseph L. Alioto, Saveri & Saveri and Richard Saveri for Defendants and Respondents.

BURKE, J.—This is an appeal by the Director of the Department of Alcoholic Beverage Control (the Department) from a judgment denying mandamus to compel the Alcoholic Beverage Control Appeals Board (the Appeals Board) to vacate a portion of its decision reversing the Department's revocation of the on-sale beer and wine license of Giovanni Belfiore. The principal question presented is whether the Appeals Board exceeded its powers in reversing the Department's revocation of the license.

Belfiore operated a small pizzeria in San Francisco for which he held an on-sale beer and wine license. He was first licensed in 1956, and no disciplinary action was taken against him by the Department before that involved here. In this proceeding the Department ordered his license revoked on each count from XIII through XVII. With respect to these counts, the Department determined that he used the services of his minor son Horace on a portion of the premises primarily designed and used for the sale of alcoholic beverages for consumption on the premises in violation of section 25663 of the Alcoholic Beverage Control Act (count XIII);[1] that he permitted a female who was not a licensee or the wife of a licensee to dispense wine from behind a permanently affixed fixture used for the preparation and concoction of alcoholic beverages in violation of section 25656 (counts XIV and XVII); that he sold alcoholic beverages to an obviously intoxicated person in violation of section 25602 (count XV); that he had distilled spirits on premises licensed only for the sale of beer and wine in violation of section 25607 (count XVI); and that the continuance of his license would be contrary to public welfare and morals. The Appeals Board concluded that the evidence was sufficient to support counts XIII through XVII but that the penalty of revocation was too severe, and it remanded the matter to the Department for reconsideration of the penalty as to these counts. The Department then brought the instant mandamus proceeding to compel the Appeals Board to vacate its decision reversing the Department's revocation of Belfiore's license with respect to counts XIII through XVII.[2]

---

[1] Unless otherwise noted, section references are to the Alcoholic Beverage Control Act (Bus. & Prof. Code, § 23000 et seq.).

[2] Review was not sought in the superior court of the portion of the Appeals Board's decision relating to counts I through XII and count XVIII. With respect to those counts, the Department determined that

The facts relating to these counts may be summarized as follows:

Count XIII (use of services of a minor). On June 2, 1961, Ronald Lockyer, Rudolph Hoffman, and Chester Jew, investigators for the Department, went to Belfiore's restaurant about 11:35 p.m. Belfiore, his 16-year-old son Horace, and another son, James, were at the restaurant that night. The sons had gone there earlier in the evening for a "snack" and after eating had noticed dishes accumulating on the tables and decided to help their father by cleaning up. Horace cleared the tables and served food to customers. He also worked behind the bar and filled several pitchers with beer, which he served to two groups of minors without asking for identification. The investigators stayed at the restaurant about two hours. Belfiore spent most of this time in the food preparation area at the front of the restaurant, but he walked to the rear of the restaurant several times and talked to Horace behind the bar. Belfiore was standing about 20 feet from Horace and was "looking around the premises" on one of the occasions when Horace went behind the bar, filled a pitcher with beer, and served it. Horace testified that his father had not instructed him to serve beer; that he had been released from the Log Cabin Ranch School for Boys about a week before the night in question and had been told by his probation officer to help his father at the restaurant. He had worked for his father "off and on" during the week after his release and was not paid any salary.[3]

Count XIV (permitting female to dispense wine). On June 3, 1961, Jew again went to the restaurant. Belfiore and a waitress, Angeline Newsome, were there that night. Jew ordered some pizza, and the waitress asked him what he wanted to drink. He inquired as to the kind of wine she had, and she

Belfiore sold beer to six minors in violation of section 25658 (counts I through VI); that he permitted the same minors to consume beer in violation of section 25658 (counts VII through XII); and that he employed the services of a minor, Wendy Wales, in violation of section 25663 (count XVIII). The Department ordered his license suspended for 15 days on each of the first twelve counts, the penalties on the first six counts to run consecutively and on the next six counts to run concurrently with those on the first six counts. The Department ordered his license revoked on count XVIII. The Appeals Board concluded that all counts except IV, X, and XVIII were supported by substantial evidence and affirmed the term of suspension ordered by the Department, except that the total period of suspension was reduced from 90 to 75 days because the evidence did not support counts IV and X.

[3] The acts involved in count XIII also constituted the basis for the charges in counts I through XII.

said she would give him some "house wine." She poured some wine into a glass and served it to him at the counter. Lockyer then arrived, and while he was writing a citation the waitress grabbed the glass and tried to pour the wine into a sink, but the investigators succeeded in retrieving some of it.

Count XV (serving obviously intoxicated person). On June 3, 1961, a man named Walter Olcott staggered into Belfiore's restaurant. Olcott was singing incoherently, and his breath smelled of alcohol. He requested beer and the waitress served it to him. He fell asleep but thereafter appeared to recover somewhat and was allowed to go home. The waitress told Jew that Olcott was "loaded" and that after he "makes all the other places he usually comes here before he goes home." Olcott testified that he had suffered a stroke in 1960 and was under a doctor's care, that he did not drink except sometimes some beer or wine, that when he drank "a couple of beers" he became silly, and that he had gone to Belfiore's restaurant a number of times for coffee and occasionally for one or two "beers."

Count XVI (possession of distilled spirits on premises licensed only for sale of beer and wine). On June 3, 1961, Lockyer saw a bottle of creme de menthe on the bar at Belfiore's restaurant. Belfiore testified that he bought the creme de menthe to put into his coffee to remove the taste of medicine he took and that no one else had ever had any of the liqueur. A letter from a doctor stated that Belfiore was under his care for an ulcer and that Belfiore regularly took certain medications that might leave a bad taste which would be counteracted by a little creme de menthe.

Count XVII (permitting female to dispense wine). On June 9, 1961, Ulysses Beasley, an investigator for the Department, went to Belfiore's restaurant and sat down at the counter. He asked a waitress, Wendy Wales, for a specific type wine, and she informed Belfiore of his request. Belfiore obtained a bottle of the wine and handed it and a glass to the waitress, who in turn placed them in front of Beasley.

Section 22 of article XX of the California Constitution provides, "The Department of Alcoholic Beverage Control . . . shall have the power, in its discretion, to . . . suspend or revoke any specific alcoholic beverages license if it shall determine for good cause that the . . . continuance of such license would be contrary to public welfare or morals, . . . Review by the board [the Alcoholic Beverage Control Appeals Board] of a decision of the department shall be limited to the questions

whether the department has proceeded without or in excess of its jurisdiction, whether the department has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record. . . . When the order reverses the decision of the department, the board may direct the reconsideration of the matter in the light of its order and may direct the department to take such further action as is specially enjoined upon it by law, but the order shall not limit or control in any way the discretion vested by law in the department. . . ." (See also Bus. & Prof. Code, §§ 24200, 23084, 23085.)

Under the cited constitutional and statutory provisions the propriety of the penalty is a matter vested in the discretion of the Department, and its determination may not be disturbed unless there is a clear abuse of discretion. (*Martin* v. *Alcoholic Beverage etc. Appeals Board*, 52 Cal.2d 287, 291, 293 [341 P.2d 296] ; cf. *Magit* v. *Board of Medical Examiners*, 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].)

If reasonable minds might differ as to the propriety of the penalty imposed, this fact serves to fortify the conclusion that the Department acted within the area of its discretion. (*Martin* v. *Alcoholic Beverage etc. Appeals Board, supra,* 52 Cal.2d 287, 294.) It has been held, for example, that the Department did not abuse its discretion in revoking a license where the licensee violated Penal Code section 337a by taking an unlawful bet on the licensed premises (*MacFarlane* v. *Department of Alcoholic Beverage Control*, 51 Cal.2d 84, 91 [330 P.2d 769]) and where the licensee over a number of years repeatedly misrepresented a material fact by failing on license renewal applications to disclose that the business was in fact operated by a partnership (*Martin* v. *Alcoholic Beverage etc. Appeals Board, supra*, 52 Cal.2d 287, 289 et seq.).

Although the Department's discretion with respect to the penalty is broad, it does not have absolute and unlimited power. It is bound to exercise legal discretion, which is, in the circumstances, judicial discretion. (*Martin* v. *Alcoholic Beverage etc. Appeals Board*, 55 Cal.2d 867, 875 [13 Cal.Rptr. 513, 362 P.2d 337].) In *Martin* this court stated, " 'The term "judicial discretion" was defined in *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424, as follows: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in

conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' "

 Here the Appeals Board concluded that the revocation of Belfiore's license constituted a clear abuse of discretion by the Department, and the trial court apparently also so concluded since it denied mandamus. We are satisfied that their conclusion is correct. Belfiore had no prior disciplinary record with the Department. For almost five years, from 1956 when he obtained a license until the instant proceeding in 1961, he had not been in any difficulties with the Department. Although within an eight-day period several acts were committed that were improper, they were not of such a nature as to warrant revocation of his license. It does not appear that Belfiore regularly employed a minor to act as a bartender but rather that his son volunteered his services on the night in question and filled a few pitchers with beer which he served. The son served the beer to minors, but the Department considered suspension for a limited period of time an adequate penalty for Belfiore's allowing the minors to be served. The fact that a waitress on one occasion served a glass of beer to an intoxicated person and that her acts and knowledge are imputable to the licensee (*Garcia* v. *Martin*, 192 Cal.App.2d 786, 790 [14 Cal.Rptr. 59]) does not warrant the imposition of the most severe administrative penalty possible, nor do the circumstances surrounding the service of wine to the investigators show that the offenses were of such a character that revocation was justified. With respect to the creme de menthe, there was no evidence that it was used for any purpose except Belfiore's own personal use.

The Appeals Board requests that judicial notice be taken of a bulletin from the director of the Department to area administrators containing a schedule of penalties under which the standard penalty, in the absence of mitigating or aggravating circumstances, is suspension for a total of not more than 75 days for the same or similar offenses as the ones for which the Department ordered revocation of Belfiore's license. Judicial notice may be taken of public and private official acts of the executive department of the state. (Code Civ. Proc., § 1875, subd. 3; *Pearson* v. *State Social Welfare Board,* 54 Cal.2d 184, 210 [5 Cal.Rptr. 553, 353 P.2d 33].)

 We do not agree with the Department's contention that the failure to make the bulletin a part of the administrative record precludes this court from taking judicial notice of

it. The Department relies upon *DeMartini* v. *Department of Alcoholic Beverage Control,* 215 Cal.App.2d 787, 809-811 [30 Cal.Rptr. 668], which contains dictum that the court could not under the guise of judicial notice incorporate into the administrative record a matter of common knowledge not officially noticed by the Department. The court in *DeMartini* said that under Government Code section 11515 the Department was permitted to take official notice of any fact that may be judicially noticed, provided it followed the procedural provisions of that section;[4] that the court reviewed the administrative record; and that in the court's opinion the procedural restrictions persisted upon judicial review. ■ There is nothing in the language of section 11515 indicating that failure to take official notice of a matter precludes a court from taking judicial notice of it, and the reasons for the procedural requirements in that section do not necessitate that such requirements always be complied with before a court may take judicial notice of a matter. ■ The requirement in section 11515 that the parties be informed of, and given an opportunity to refute, the matters to be noticed was designed to protect the parties from unwarranted action by an agency, and the requirement that matters noticed be referred to in the record was to insure that the facts noticed would be brought to the attention of the reviewing court. (See Tenth Biennial Report of Judicial Council of Cal. (1944) p. 23.)

■ In the present case no reason is apparent why the failure to make the bulletin a part of the administrative record should preclude our taking judicial notice of it. Insofar as *DeMartini* is inconsistent with our view that judicial notice may be taken of the bulletin it is disapproved.

■ The Department further contends that even if judicial notice is taken of the bulletin it does not aid Belfiore because the Department cannot by its own rules limit the exercise of its constitutional discretion in determining the penalty (cf. *Bank of Italy* v. *Johnson,* 200 Cal. 1, 15 et seq. [251 P. 784]). The bulletin, however, does not circumscribe the exercise of

---

[4]Section 11515 reads: ''In reaching a decision official notice may be taken, either before or after submission of the case for decision, of any generally accepted technical or scientific matter within the agency's special field, and of any fact which may be judicially noticed by the courts of this State. Parties present at the hearing shall be informed of the matters to be noticed, and those matters shall be noted in the record, referred to therein, or appended thereto. Any such party shall be given a reasonable opportunity on request to refute the officially noticed matters by evidence or by written or oral presentation of authority, the manner of such refutation to be determined by the agency.''

the Department's discretion. The face of the bulletin shows that it was contemplated that the schedule of penalties might not be followed where aggravating or mitigating circumstances were present, and even in the absence of such circumstances a departure from the schedule would not necessarily show an abuse of discretion by the Department. The Department also, of course, was not precluded from changing the schedule. The bulletin merely constitutes evidence of the Department's policy regarding penalties and thus of the manner in which the Department's discretion has probably been exercised in other cases, and in our opinion this is an appropriate matter for us to consider in determining whether the Department acted here within the limits of its discretion.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Schauer, J.,* concurred.

Appellant's petition for a rehearing was denied May 12, 1965.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.